**EXHIBIT 10-A**

GREYSTONE SERVICING COMPANY LLC
419 Belle Air Lane
Warrenton, VA 20186
855-464-7391
www.greyco.com

FORBEARANCE AGREEMENT

VIA EMAIL AND OVERNIGHT DELIVERY

TO: KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

FROM: Patti McHugh, Director of Loss Mitigation

DATE: May 6, 2020

| | | | |
|---|---|---|---|
| Loan Number: | FNMA #1717471449/GSC #018099 | | |
| Borrower Name: | KRCM Astoria Portfolio Corp. | | |
| Property Name: | Astoria Portfolio | | |
| Property Address: | 23-05 30th Avenue<br>Astoria, NY 11102 | 23-15 30th Avenue<br>Astoria, NY 11102 | 21-80 38th Avenue<br>Astoria, NY 11105 |

RE: Fannie Mae Loan No. 1717471449 (the "Loan")
23-05 30th Avenue, Astoria, NY 11102, , 23-15 30th Avenue, Astoria, NY 11102, and
21-80 38th Avenue, Astoria, NY 11105 (the "Property")
Forbearance and Non-Waiver

Dear Borrower and Guarantor:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia corporation n/k/a Greystone Servicing Company LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents.

In connection with the Note please be advised as follows:

1. On March 11, 2020, the World Health Organization Director-General characterized the spread of the COVID-19 virus as a pandemic (the "Health Crisis"). On March 13, 2020, the President of the United States of America declared a federal emergency in response to the Health Crisis. Because of the Health Crisis, Borrower has failed to make or reasonably foresees its inability to make the required monthly payment under the Note. Accordingly, the Loan and Note are currently delinquent for the month of April 2020. Borrower's obligation to make these monthly payments under the Note has not been waived by Fannie Mae but continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property have suffered a hardship as a result of the Health Crisis such that short-term relief from Borrower's

obligations is needed. As an accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property, and to commence processing applicable insurance claims or other claims for relief from available resources, and notwithstanding the defaults as a result of the delinquent monthly payments and/or other defaults that may exist, Fannie Mae has agreed to forbear from exercising its rights and remedies under the Note and other Loan Documents on the terms set forth herein.

3. Fannie Mae will continue to forbear from exercising its rights and remedies through June 30, 2020 ("Forbearance Expiration Date"); conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary. To the extent the Forbearance Expiration Date exceeds thirty (30) days from the date hereof, Borrower represents it has requested the extension or extensions allowed under the CARES Act to be entitled to the total period of relief granted herein.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding forbearance amounts due in equal monthly installments to be repaid on a schedule not to exceed twelve (12) months following the Forbearance Expiration Date and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. If Borrower elects to repay the outstanding forbearance amounts due in monthly installments, Borrower may prepay the outstanding forbearance amounts due at any time without a prepayment premium. Notwithstanding the foregoing, Borrower shall bring the Loan current upon receipt of Business Income (business interruption/rent loss) insurance proceeds by Borrower or Servicer or upon receipt of any other financial relief or assistance available to Borrower from any other source, including, but not limited to, any local, state, or federal government assistance or relief program.

   In the event Borrower fails to timely perform any of its obligations under this paragraph 3, Fannie Mae's agreement to forbear from exercising its rights and remedies under the Note and other Loan Documents shall immediately terminate, without further notice or demand, and Fannie Mae may, at its option, accelerate the Note and/or exercise any and all other rights and remedies available to it under the Loan Documents, at law or in equity.

5. If Servicer is in receipt of Borrower's insurance proceeds, these insurance proceeds and any other insurance proceeds with respect to the Property (including business income/business interruption/rent loss insurance) will be held in escrow by Servicer, on behalf of Fannie Mae, pending Borrower's completion and delivery of those items described in the Loan Documents, with respect to the use of the insurance proceeds. Such insurance proceeds shall continue to be held in escrow by Servicer in an Insurance Proceeds Collateral Account for reimbursement to Borrower for costs of stabilizing the Property and/or applied to the Loan, as provided by the Loan Documents.

6. Monthly installments under the Note are due on the first day of each month and are subject to a late fee if received after the tenth (10th) day of each month. In addition, the Note and other Loan Documents provide for the charging of interest at a default rate of eight and thirty-one hundredths percent (8.31%) during the period that Borrower is in default. Upon the timely performance by Borrower of its obligations listed in paragraph 3 above, Fannie Mae and Servicer agree to waive collection of such late fees and default interest. In the event, however, Borrower fails to perform as described in paragraph 3 above or seeks protection under federal or state bankruptcy or insolvency laws prior to the expiration of Fannie Mae's agreement to forbear, such late fees and default interest shall be fully due and payable by Borrower.

7. As additional consideration for the relief granted herein by Fannie Mae, Borrower expressly agrees to not pursue or initiate, and agrees to defer, halt, cease, and abate, any eviction or similar action against any tenant solely on the basis of such tenant's inability to pay his or her rent obligation to Borrower. Borrower agrees to be bound by the eviction suspension until the longer of (i) the moratorium imposed under Sec. 4024 of the CARES Act, (ii) the Forbearance Expiration Date, or (iii) any longer period otherwise mandated by law.

8. Until Borrower is current on its obligations to Fannie Mae, Borrower agrees any revenue or income generated by the Property, whether from rents or other sources, will be used solely for allowable normal and customary operating expenses and approved capital expenditures. Borrower further agrees no fees, charges, or compensation, except as provided herein for management fees, shall be paid or distributed to Borrower, its general partners, limited partners, members, or other related persons or entities, if any, or to any affiliates thereof, until Borrower is current on its obligations to Fannie Mae.

   For each month through the Forbearance Expiration Date, Borrower agrees to remit to Servicer, no less frequently than monthly, all net operating income from the Property ("NOI"), as defined below. Borrower's remittance of NOI does not replace or waive Borrower's obligation to make the required installments on the Loan.

   NOI shall mean all revenue or income generated by operations of the Property, including, but not limited to, rental receipts, late fees, application fees, forfeited deposits, laundry and vending income, furniture rental, and insurance proceeds, less only those allowable expenses and approved capital expenditures relative to the operation of the Property. Allowable expenses shall include a management fee not to exceed the lower of the current contract fee or five percent (5.0%) of the actual collections (which collections do not include insurance proceeds or condemnation awards) per month.

   Each month, the tender of NOI is to be accompanied and supported by a statement of monthly income and expenses which has been certified by an appropriate representative of Borrower as entirely true, correct and complete. This statement is to be prepared on a cash basis, in such detail as may be requested by Fannie Mae or Servicer, and must be received by Servicer with such cash payments no later than the 10th calendar day of the month following the month reported for. For example, the NOI and statement for the period ending April 2020, must be received by Servicer on or before May 10, 2020.

   Fannie Mae may use the funds provided by Borrower in any order and for any purpose which is related directly or indirectly to the Loan Documents or to the Property including, without limitation, the payment of attorneys' fees or other charges incurred by Fannie Mae, application to principal or interest due under the note evidencing the Loan, payment for repairs or capital expenditures for the Property, or any other purpose determined by Fannie Mae in its sole and absolute discretion and in accordance with the Loan Documents. The receipt and application of such funds by Fannie Mae shall not constitute a waiver of any amounts due under the Loan Documents or of any default in connection therewith.

9. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This letter is to evidence Fannie Mae's and Borrower's agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall

not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

10. By signing the Acceptance included herein, Borrower unconditionally acknowledges to be indebted to Fannie Mae for all amounts presently unpaid and outstanding under the Note, in principal, interest, and other amounts, without defense, setoff, deduction or counterclaim of any kind whatsoever, all of which are forever waived and released.

11. By signing the Acceptance included herein, Borrower additionally unconditionally acknowledges and agrees that no act, event or circumstance occurring since the date of the Note and the other Loan Documents shall give rise to any claim or cause of action (regardless of whether based on common or civil law, equity, statute, regulation, or other grounds) against Fannie Mae or Servicer, or against any of their respective officers, directors, employees, successors, assigns, agents, and attorneys (collectively, the "Released Parties"), with Borrower hereby unconditionally and fully releasing and forever discharging the Released Parties from all actions, causes of action, claims and/or demands or every nature whatsoever, whether at law or in equity, in tort or in contract, or otherwise, and whether known or unknown, or present or contingent, including release of any rights to recover consequential or punitive damages, that Borrower may now have as against any Released Party, further including any and all claims in connection with the Loan, this forbearance agreement, or any extension of credit, refusal to extend credit, waiver, acquiescence, or any other act or failure to act in connection with any matter pertaining to the Note, the Security Instrument, and/or the Loan Documents. Borrower expressly acknowledges this paragraph is intended to include any claim or action Borrower may assert now or in the future against Fannie Mae or Servicer arising out of or from the Borrower's agreement to the eviction suspension described herein.

12. Borrower represents: (i) it is a sophisticated commercial real estate investor that has had the opportunity to be represented by independent counsel of its own choosing, (ii) it or its authorized parties have carefully read and fully understand this agreement in its entirety, and (iii) it is fully aware of the contents herein and its meaning, including any risks related thereto. Borrower further represents the individual executing this letter has been duly authorized to act on behalf of Borrower, has executed this agreement free from coercion, duress or undue influence, and that the agreements set forth herein are part of an arms-length transaction. Borrower affirms it has not relied upon any guidance from Fannie Mae or Servicer in its decision to enter into this agreement. Borrower agrees it is not a third-party beneficiary of any certification of Servicer to Fannie Mae related to this agreement or of any contract or agreement between Servicer and Fannie Mae.

13. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

If you have any questions regarding this matter, please do not hesitate to call Patti Mchugh at (301) 354-5013 or via email at Patti.McHugh@greyco.com.

Sincerely,

GREYSTONE SERVICING COMPANY LLC,
f/k/a Greystone Servicing Corporation, Inc.

By: Sharon Briskman
Name: Sharon Briskman
Title: Executive Vice President

By the signature above, Servicer represents and certifies to Fannie Mae Servicer has acted as a prudent commercial real estate lender and conducted sufficient due diligence and reviewed the information and documents necessary to document the Borrower's hardship and determine the relief granted herein for the Borrower is necessary.

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this 7 day of May, 2020.

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

X By: Rajamattie Persaud
Name: Rajamattie Persaud
Title: President

GREYSTONE

GREYSTONE SERVICING COMPANY LLC
419 Belle Air Lane
Warrenton, VA 20186
855-464-7391
www.greyco.com

FORBEARANCE EXTENSION FORM

VIA EMAIL AND OVERNIGHT DELIVERY

TO: KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

FROM: Ben Brown, Senior Asset Manager

DATE: July 27, 2020

| | | | |
|---|---|---|---|
| Loan Number: | FNMA # 1717471449/GSC #018099 | | |
| Borrower Name: | KRCM Astoria Portfolio Corp. | | |
| Property Name: | Astoria Portfolio | | |
| Property Address: | 23-05 30th Avenue<br>Astoria, NY 11102 | 23-15 30th Avenue<br>Astoria, NY 11102 | 21-80 38th Avenue<br>Astoria, NY 11105 |

RE: Fannie Mae Loan No. 1717471449 (the "Loan")
23-05 30th Avenue, Astoria, NY 11102, 23-15 30th Avenue, Astoria, NY 11102, and 21-80 38th Avenue, Astoria, NY 11105 (the "Property")
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower and Guarantor:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis.. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June and July, 2020. Borrower's obligation to make these monthly payments under the Note has not been waived by Fannie Mae but continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the delinquent monthly payments, Fannie Mae has agreed to continue to forbear from exercising its rights and

remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement..

3. The Forbearance Expiration Date is hereby extended through September 30, 2020 ("Forbearance Expiration Date") conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

   Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

   If Servicer is in receipt of Borrower's insurance proceeds, these insurance proceeds and any other insurance proceeds with respect to the Property (including business income/business interruption/rent loss insurance) will be held in escrow by Servicer, on behalf of Fannie Mae, pending Borrower's completion and delivery of those items described in the Loan Documents, with respect to the use of the insurance proceeds. Such insurance proceeds shall continue to be held in escrow by Servicer in an Insurance Proceeds Collateral Account for reimbursement to Borrower for costs of stabilizing the Property and/or applied to the Loan, as provided by the Loan Documents.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the new Forbearance Expiration Date, and Borrower shall:

   (a) Allow tenants who missed rent payments during the Forbearance Period with a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require tenants to repay missed rent payments in one lump sum amount;
   (b) Not impose on any tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan;
   (c) Provide any tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant, but cannot give such notice prior to the expiration of Borrower's Forbearance Period; and
   (d) Each month until Borrower is current on the Loan, provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the eviction suspension and the requirements of this paragraph.

6. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

7. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

8. Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**

If you have any questions regarding this matter, please do not hesitate to call Ben Brown at 469-965-6552 or via email at ben.brown@greyco.com.

Sincerely,

GREYSTONE SERVICING COMPANY LLC,
f/k/a Greystone Servicing Corporation, Inc.

By: ______________________
Name: Sharon Briskman
Title: Executive Vice President

By the signature above, Servicer represents and certifies to Fannie Mae Servicer has acted as a prudent commercial real estate lender and conducted sufficient due diligence and reviewed the information and documents necessary to document the Borrower's hardship and determine the relief granted herein for the Borrower is necessary.

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of July, 2020.

**KRCM ASTORIA PORTFOLIO CORP.**,
a New York corporation

By: ______________________
Name: Rajamattie Persaud
Title: President

Fannie Mae®

November __, 2020

VIA EMAIL AND OVERNIGHT DELIVERY

KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Re: Fannie Mae Loan No. 1717471449 / GSC 018099 (the "Loan")
Astoria Portfolio (the "Property")
Property Address: 23-05 30th Avenue, Astoria, NY 11102; 23-15 30th Avenue, Astoria, NY 11102; 21-80 30th Avenue, Astoria, NY 11102
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia Corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents and the Forbearance and Non-Waiver Agreement.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June, July, August, September, October, and November, 2020. Borrower's obligation to make these monthly payments under the Note has not been waived by Fannie Mae and such payments continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the delinquent monthly payments, Fannie Mae has agreed to continue to forbear from exercising its rights and remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement.

3. The Forbearance Expiration Date is hereby extended through December 31, 2020; <u>conditioned</u>, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the longer of the new Forbearance Expiration Date or any longer period otherwise mandated by law (the "Eviction Suspension"), and Borrower shall:

(a) Allow residential tenants who missed rent payments during the Forbearance Period a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require residential tenants to repay missed rent payments in one lump sum amount;
(b) Not impose on any residential tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan; and,
(c) Provide any residential tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant but cannot give such notice prior to the Forbearance Expiration Date.

Each of (a), (b), and (c) above are referenced as "Tenant Protections" herein. Each month until Borrower is current on the Loan, Borrower shall provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the Eviction Suspension, the Tenant Protections, and the Tenant Notification (hereinafter defined) requirements in this Agreement.

6. In addition to the requirements in the preceding paragraph, Borrower shall:


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

(a) Provide each residential tenant, within fourteen (14) days of the Effective Date, a written notice (email notification acceptable) that the tenant is being afforded certain tenant protections. This notice must disclose:
   (i) that the Borrower's Loan is in forbearance;
   (ii) the dates of the Borrower's Forbearance Period;
   (iii) a description of the Tenant Protections, including the suspension of evictions for nonpayment of rent, provided on account of the forbearance;
   (iv) the effective dates of the Tenant Protections; and,
   (v) contact information for the applicable property manager.

(b) Provide the notice described in (a), at the time a new residential lease is signed, to any new residential tenant while the Tenant Protections are in place.

(c) Provide each residential tenant, at least ten (10) days prior to the Forbearance Expiration Date, with a written notice (email notification acceptable) listing (i) the Tenant Protections that will end on the Forbearance Expiration Date and (ii) the Tenant Protections that will continue to apply, if any.

(d) Provide each residential tenant, within ten (10) days after the Loan is brought current, with a written notice (email notification acceptable) that late fees may begin to accrue for any late or missed rent payments.

(e) Deliver to Servicer, within thirty (30) days of the Effective Date, a written certification to Fannie Mae and Servicer that the notifications required by this paragraph have been given and that Borrower will provide any additional notifications required to be given by this paragraph.

(f) Retain records evidencing the notices were provided and shall, upon demand from Fannie Mae or Servicer, provide copies of such records to Fannie Mae.

Any residential tenant notice required in this paragraph is herein referred to as a "Tenant Notification" for purposes of this Agreement. The Tenant Notification may state the forbearance and Tenant Protections do not forgive or excuse performance by the residential tenant of the lease terms, including, but not limited to, the requirement to pay rent on the terms set forth in the tenant's lease.

7. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

For each month of the Forbearance Period from October 2020 through December 2020, Borrower agrees to remit to Servicer the greater of (i) all excess NOI from the Property for such month, and (ii) fifty percent (50%) of the principal and interest payment due under the Note for such month (the "Remittance Amount"). The Remittance Amount must be received by Servicer no later than the 10th calendar day of the month following the month reported for. For example, the Remittance


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

Amount for the period ending October 2020, must be received by Servicer on or before November 10, 2020.

8. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

9. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**


© 2021 Fannie Mae. Trademarks of Fannie Mae.

If you have any questions regarding this matter, please do not hesitate to call Joel Shaddox at 972.861.6798 or email at mailto:joel_shaddox@fanniemae.com.

Sincerely,

**Fannie Mae**

By: ______________________________
Name Roy E. Miller
Title: Assistant Vice President

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of November, 2020. ("Effective Date")

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

By: ______________________________
Name Rajmattie Persaud
Title: President


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

Fannie Mae

April 14, 2021

VIA EMAIL AND OVERNIGHT DELIVERY

KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Re: Fannie Mae Loan No. 1717471449 / GSC 018099 (the "Loan")
Astoria Portfolio (the "Property")
Property Address: 23-05 30th Avenue, Astoria, NY 11102 | 23-15 30th Avenue, Astoria, NY 11102 | 21-80 30th Avenue, Astoria, NY 11102
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia Corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents and the Forbearance and Non-Waiver Agreement.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June, July, August, September, October, November, and December, 2020, and January, February, March, and April, 2021. Borrower's obligation to make the required monthly payment under the Note, including any required impounds for taxes, insurance, and other obligations (the "Monthly Debt Service") has not been waived by Fannie Mae and such payments continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the delinquent monthly payments, Fannie Mae has agreed to continue to forbear from

exercising its rights and remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement.

3. The Forbearance Expiration Date is hereby extended through May 31, 2021; conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

   Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the longer of the new Forbearance Expiration Date or any longer period otherwise mandated by law (the "Eviction Suspension"), and Borrower shall:

   (a) Allow residential tenants who missed rent payments during the Forbearance Period a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require residential tenants to repay missed rent payments in one lump sum amount;
   (b) Not impose on any residential tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan; and,
   (c) Provide any residential tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant but cannot give such notice prior to the Forbearance Expiration Date.

   Each of (a), (b), and (c) above are referenced as "Tenant Protections" herein. Each month until Borrower is current on the Loan, Borrower shall provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the Eviction Suspension, the Tenant Protections, and the Tenant Notification (hereinafter defined) requirements in this Agreement.


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

6. In addition to the requirements in the preceding paragraph, Borrower shall:

(a) Provide each residential tenant, within fourteen (14) days of the Effective Date, a written notice (email notification acceptable) that the tenant is being afforded certain tenant protections. This notice must disclose:
   (i) that the Borrower's Loan is in forbearance;
   (ii) the dates of the Borrower's Forbearance Period;
   (iii) a description of the Tenant Protections, including the suspension of evictions for nonpayment of rent, provided on account of the forbearance;
   (iv) the effective dates of the Tenant Protections; and,
   (v) contact information for the applicable property manager.

(b) Provide the notice described in (a), at the time a new residential lease is signed, to any new residential tenant while the Tenant Protections are in place.

(c) Provide each residential tenant, at least ten (10) days prior to the Forbearance Expiration Date, with a written notice (email notification acceptable) listing (i) the Tenant Protections that will end on the Forbearance Expiration Date and (ii) the Tenant Protections that will continue to apply, if any.

(d) Provide each residential tenant, within ten (10) days after the Loan is brought current, with a written notice (email notification acceptable) that late fees may begin to accrue for any late or missed rent payments.

(e) Deliver to Servicer, within thirty (30) days of the Effective Date, a written certification to Fannie Mae and Servicer that the notifications required by this paragraph have been given and that Borrower will provide any additional notifications required to be given by this paragraph.

(f) Retain records evidencing the notices were provided and shall, upon demand from Fannie Mae or Servicer, provide copies of such records to Fannie Mae.

Any residential tenant notice required in this paragraph is herein referred to as a "Tenant Notification" for purposes of this Agreement. The Tenant Notification may state the forbearance and Tenant Protections do not forgive or excuse performance by the residential tenant of the lease terms, including, but not limited to, the requirement to pay rent on the terms set forth in the tenant's lease.

7. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

For each month of the Forbearance Period from January 2021 through May 2021, Borrower agrees to remit to Servicer the greater of (i) all excess NOI from the Property for such month, and (ii) fifty percent (50%) of the principal and interest payment due under the Note for such month (the "Remittance Amount"). The Remittance Amount must be received by Servicer no later than the 10th calendar


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

day of the month following the month reported for. For example, the Remittance Amount for the period ending January 2021, must be received by Servicer on or before February 10, 2021.

8. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

9. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**


© 2021 Fannie Mae. Trademarks of Fannie Mae.

If you have any questions regarding this matter, please do not hesitate to call Joel Shaddox at 972.861.6798 or email at joel_shaddox@fanniemae.com.

Sincerely,

**Fannie Mae**

By: ______________________
Name Roy E. Miller
Title: Assistant Vice President

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of April, 2021. ("Effective Date")

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

By: ______________________
Name Rajmattie Persaud
Title: President


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

Fannie Mae

June 25, 2021

VIA EMAIL AND OVERNIGHT DELIVERY

KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Re: Fannie Mae Loan No. 1717471449 / GSC 018099 (the "Loan")
Astoria Portfolio (the "Property")
Property Address: 23-05 30th Avenue, Astoria, NY 11102; 23-15 30th Avenue, Astoria, NY 11102; 21-80 30th Avenue, Astoria, NY 11102
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia Corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents and the Forbearance and Non-Waiver Agreement.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June, July, August, September, October, November, and December, 2020, and January, February, March, April, May, and June, 2021. Borrower's obligation to make the required monthly payment under the Note, including any required impounds for taxes, insurance, and other obligations (the "Monthly Debt Service") has not been waived by Fannie Mae and such payments continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the delinquent monthly payments, Fannie Mae has agreed to continue to forbear from

exercising its rights and remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement.

3. The Forbearance Expiration Date is hereby extended through August 31, 2021; conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

   Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the longer of the new Forbearance Expiration Date or any longer period otherwise mandated by law (the "Eviction Suspension"), and Borrower shall:

   (a) Allow residential tenants who missed rent payments during the Forbearance Period a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require residential tenants to repay missed rent payments in one lump sum amount;
   (b) Not impose on any residential tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan; and,
   (c) Provide any residential tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant but cannot give such notice prior to the Forbearance Expiration Date.

   Each of (a), (b), and (c) above are referenced as "Tenant Protections" herein. Each month until Borrower is current on the Loan, Borrower shall provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the Eviction Suspension, the Tenant Protections, and the Tenant Notification (hereinafter defined) requirements in this Agreement.


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

6. In addition to the requirements in the preceding paragraph, Borrower shall:

(a) Provide each residential tenant, within fourteen (14) days of the Effective Date, a written notice (email notification acceptable) that the tenant is being afforded certain tenant protections. This notice must disclose:
   (i) that the Borrower's Loan is in forbearance;
   (ii) the dates of the Borrower's Forbearance Period;
   (iii) a description of the Tenant Protections, including the suspension of evictions for nonpayment of rent, provided on account of the forbearance;
   (iv) the effective dates of the Tenant Protections; and,
   (v) contact information for the applicable property manager.

(b) Provide the notice described in (a), at the time a new residential lease is signed, to any new residential tenant while the Tenant Protections are in place.

(c) Provide each residential tenant, at least ten (10) days prior to the Forbearance Expiration Date, with a written notice (email notification acceptable) listing (i) the Tenant Protections that will end on the Forbearance Expiration Date and (ii) the Tenant Protections that will continue to apply, if any.

(d) Provide each residential tenant, within ten (10) days after the Loan is brought current, with a written notice (email notification acceptable) that late fees may begin to accrue for any late or missed rent payments.

(e) Deliver to Servicer, within thirty (30) days of the Effective Date, a written certification to Fannie Mae and Servicer that the notifications required by this paragraph have been given and that Borrower will provide any additional notifications required to be given by this paragraph.

(f) Retain records evidencing the notices were provided and shall, upon demand from Fannie Mae or Servicer, provide copies of such records to Fannie Mae.

Any residential tenant notice required in this paragraph is herein referred to as a "Tenant Notification" for purposes of this Agreement. The Tenant Notification may state the forbearance and Tenant Protections do not forgive or excuse performance by the residential tenant of the lease terms, including, but not limited to, the requirement to pay rent on the terms set forth in the tenant's lease.

7. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

For each month of the Forbearance Period from June 2021 through August 2021, Borrower agrees to remit to Servicer the greater of (i) all excess NOI from the Property for such month, and (ii) fifty percent (50%) of the principal and interest payment due under the Note for such month (the "Remittance Amount"). The Remittance Amount must be received by Servicer no later than the 10th calendar


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

day of the month following the month reported for. For example, the Remittance Amount for the period ending June 2021, must be received by Servicer on or before July 10, 2021.

8. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

9. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

If you have any questions regarding this matter, please do not hesitate to call Joel Shaddox at 972.861.6798 or email at joel_shaddox@fanniemae.com.

Sincerely,

**Fannie Mae**

By: ______________________
Name Roy E. Miller
Title: Assistant Vice President

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of June, 2021. ("Effective Date")

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

By: ______________________
Name Rajmattie Persaud
Title: President


© 2021 Fannie Mae. Trademarks of Fannie Mae.