**EXHIBIT 10-B**

Fannie Mae

September 24, 2021

VIA EMAIL AND OVERNIGHT DELIVERY

KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Re: Fannie Mae Loan No. 1717471449 / GSC 018099 (the "Loan")
Astoria Portfolio (the "Property")
Property Address: 23-05 30th Avenue, Astoria, NY 11102; 23-15 30th Avenue, Astoria, NY 11102; 21-80 30th Avenue, Astoria, NY 11102
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia Corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents and the Forbearance and Non-Waiver Agreement.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June, July, August, September, October, November, and December, 2020, and January, February, March, April, May, June, July, August, and September, 2021. Borrower's obligation to make the required monthly payment under the Note, including any required impounds for taxes, insurance, and other obligations (the "Monthly Debt Service") has not been waived by Fannie Mae and such payments continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the

delinquent monthly payments, Fannie Mae has agreed to continue to forbear from exercising its rights and remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement.

3. The Forbearance Expiration Date is hereby extended through November 30, 2021; conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the longer of the new Forbearance Expiration Date or any longer period otherwise mandated by law (the "Eviction Suspension"), and Borrower shall:

(a) Allow residential tenants who missed rent payments during the Forbearance Period a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require residential tenants to repay missed rent payments in one lump sum amount;
(b) Not impose on any residential tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan; and,
(c) Provide any residential tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant but cannot give such notice prior to the Forbearance Expiration Date.

Each of (a), (b), and (c) above are referenced as "Tenant Protections" herein. Each month until Borrower is current on the Loan, Borrower shall provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the Eviction Suspension, the Tenant


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

Protections, and the Tenant Notification (hereinafter defined) requirements in this Agreement.

6. In addition to the requirements in the preceding paragraph, Borrower shall:

(a) Provide each residential tenant, within fourteen (14) days of the Effective Date, a written notice (email notification acceptable) that the tenant is being afforded certain tenant protections. This notice must disclose:
   (i) that the Borrower's Loan is in forbearance;
   (ii) the dates of the Borrower's Forbearance Period;
   (iii) a description of the Tenant Protections, including the suspension of evictions for nonpayment of rent, provided on account of the forbearance;
   (iv) the effective dates of the Tenant Protections; and,
   (v) contact information for the applicable property manager.

(b) Provide the notice described in (a), at the time a new residential lease is signed, to any new residential tenant while the Tenant Protections are in place.

(c) Provide each residential tenant, at least ten (10) days prior to the Forbearance Expiration Date, with a written notice (email notification acceptable) listing (i) the Tenant Protections that will end on the Forbearance Expiration Date and (ii) the Tenant Protections that will continue to apply, if any.

(d) Provide each residential tenant, within ten (10) days after the Loan is brought current, with a written notice (email notification acceptable) that late fees may begin to accrue for any late or missed rent payments.

(e) Deliver to Servicer, within thirty (30) days of the Effective Date, a written certification to Fannie Mae and Servicer that the notifications required by this paragraph have been given and that Borrower will provide any additional notifications required to be given by this paragraph.

(f) Retain records evidencing the notices were provided and shall, upon demand from Fannie Mae or Servicer, provide copies of such records to Fannie Mae.

Any residential tenant notice required in this paragraph is herein referred to as a "Tenant Notification" for purposes of this Agreement. The Tenant Notification may state the forbearance and Tenant Protections do not forgive or excuse performance by the residential tenant of the lease terms, including, but not limited to, the requirement to pay rent on the terms set forth in the tenant's lease.

7. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

For each month of the Forbearance Period from September 2021 through November 2021, Borrower agrees to remit to Servicer the greater of (i) all excess NOI from the Property for such month, and (ii) sixty-five (65%) of the principal and interest


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

payment due under the Note for such month (the "Remittance Amount"). The Remittance Amount must be received by Servicer no later than the 10th calendar day of the month following the month reported for. For example, the Remittance Amount for the period ending September 2021, must be received by Servicer on or before October 10, 2021.

8. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

9. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

If you have any questions regarding this matter, please do not hesitate to call Joel Shaddox at 972.861.6798 or email at joel_shaddox@fanniemae.com.

Sincerely,

**Fannie Mae**

By: ______________________
Name Roy E. Miller
Title: Assistant Vice President

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of September, 2021. ("Effective Date")

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

By: ______________________
Name Rajmattie Persaud
Title: President


© 2021 Fannie Mae. Trademarks of Fannie Mae. 

Fannie Mae®

January 3, 2022

VIA EMAIL AND OVERNIGHT DELIVERY

KRCM Astoria Portfolio Corp.
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

Re: Fannie Mae Loan No. 1717471449 / GSC 018099 (the "Loan")
Astoria Portfolio (the "Property")
Property Address: 23-05 30th Avenue, Astoria, NY 11102; 23-15 30th Avenue, Astoria, NY 11102; 21-80 30th Avenue, Astoria, NY 11102
Extension of Forbearance and Non-Waiver (the "Extension Agreement")

Dear Borrower:

Reference is hereby made to the $34,700,000.00 Amended and Restated Multifamily Note dated April 4, 2017 (the "Note"), executed by KRCM Astoria Portfolio Corp., a New York corporation ("Borrower"), payable to the order of Greystone Servicing Corporation, Inc., a Georgia Corporation, n/k/a Greystone Servicing Company, LLC, a Delaware limited liability company (the "Servicer"). Servicer assigned, negotiated and transferred the Note to Fannie Mae, the current owner and holder of the Note. Capitalized terms not defined herein shall have the meaning ascribed to such term in the Loan Documents and the Forbearance and Non-Waiver Agreement.

1. Borrower accepted and agreed to that certain Forbearance and Non-Waiver Agreement with an Effective Date of May 6, 2020 ("Forbearance Agreement") providing payment relief to Borrower during a financial hardship due, directly or indirectly, to the Health Crisis. Accordingly, the Loan and Note are currently delinquent for the months of April, May, June, July, August, September, October, November, and December, 2020, and January, February, March, April, May, June, July, August, September, October, November, and December, 2021. Borrower's obligation to make the required monthly payment under the Note, including any required impounds for taxes, insurance, and other obligations (the "Monthly Debt Service") has not been waived by Fannie Mae and such payments continue to be due and payable, subject to the terms and conditions described herein.

2. Borrower represents to Fannie Mae and Servicer the operations and financial performance of the Property continue to suffer a hardship as a result of the Health Crisis such that additional short-term relief from Borrower's obligations is needed. As a further accommodation to Borrower to allow Borrower the opportunity to stabilize the operations of the Property and notwithstanding the defaults as a result of the

delinquent monthly payments, Fannie Mae has agreed to continue to forbear from exercising its rights and remedies under the Note and other Loan Documents on the terms set forth within this Extension Agreement.

3. The Forbearance Expiration Date is hereby extended through May 31, 2022; conditioned, however, on Borrower's cooperation with and providing monthly rent rolls, monthly rent collection reports, monthly operating statements, and such other information as requested by Servicer to determine the on-going nature of the hardship, the extent of the operational needs of the Property and such other action or relief that may be necessary.

4. Borrower will be required to bring the Loan current at the Forbearance Expiration Date or through the payment of the outstanding Monthly Debt Service in equal monthly installments to be repaid on a schedule not to exceed the aggregate of four (4) months for each month of forbearance provided to Borrower and to be repaid in addition to the then current monthly obligation due under the Note and other Loan Documents. As an example, if the total forbearance provided to Borrower is four (4) months, Borrower's repayment schedule is not to exceed sixteen (16) months beginning with the first payment due following the Forbearance Expiration Date.

   Neither the Forbearance Agreement nor this Extension Agreement shall extend or modify the Maturity Date for the Loan. Regardless of any repayment schedule for the payment of the outstanding Monthly Debt Service, all amounts owing on the Loan shall be due and payable on the Maturity Date.

5. The eviction suspension in the Forbearance Agreement is hereby extended through the longer of the new Forbearance Expiration Date or any longer period otherwise mandated by law (the "Eviction Suspension"), and Borrower shall:

   (a) Allow residential tenants who missed rent payments during the Forbearance Period a reasonable time to repay such missed rent payments as determined in the sole discretion of the Borrower; and in any event shall not require residential tenants to repay missed rent payments in one lump sum amount;
   (b) Not impose on any residential tenant a late fee, charge, or other penalty for the late or missed payment of the tenant's rent obligation until Borrower has paid all outstanding Monthly Debt Service and is current on the Loan; and,
   (c) Provide any residential tenant subject to eviction for nonpayment of rent at least 30 days' written notice to vacate the premises before repossessing the unit from the tenant but cannot give such notice prior to the Forbearance Expiration Date.

   Each of (a), (b), and (c) above are referenced as "Tenant Protections" herein. Each month until Borrower is current on the Loan, Borrower shall provide a written certification from an authorized representative of Borrower to Fannie Mae and Servicer that Borrower has complied with the Eviction Suspension, the Tenant


© 2022 Fannie Mae. Trademarks of Fannie Mae.

Protections, and the Tenant Notification (hereinafter defined) requirements in this Agreement.

6. In addition to the requirements in the preceding paragraph, Borrower shall:

(a) Provide each residential tenant, within fourteen (14) days of the Effective Date, a written notice (email notification acceptable) that the tenant is being afforded certain tenant protections. This notice must disclose:

(i) that the Borrower's Loan is in forbearance;

(ii) the dates of the Borrower's Forbearance Period;

(iii) a description of the Tenant Protections, including the suspension of evictions for nonpayment of rent, provided on account of the forbearance;

(iv) the effective dates of the Tenant Protections; and,

(v) contact information for the applicable property manager.

(b) Provide the notice described in (a), at the time a new residential lease is signed, to any new residential tenant while the Tenant Protections are in place.

(c) Provide each residential tenant, at least ten (10) days prior to the Forbearance Expiration Date, with a written notice (email notification acceptable) listing (i) the Tenant Protections that will end on the Forbearance Expiration Date and (ii) the Tenant Protections that will continue to apply, if any.

(d) Provide each residential tenant, within ten (10) days after the Loan is brought current, with a written notice (email notification acceptable) that late fees may begin to accrue for any late or missed rent payments.

(e) Deliver to Servicer, within thirty (30) days of the Effective Date, a written certification to Fannie Mae and Servicer that the notifications required by this paragraph have been given and that Borrower will provide any additional notifications required to be given by this paragraph.

(f) Retain records evidencing the notices were provided and shall, upon demand from Fannie Mae or Servicer, provide copies of such records to Fannie Mae.

Any residential tenant notice required in this paragraph is herein referred to as a "Tenant Notification" for purposes of this Agreement. The Tenant Notification may state the forbearance and Tenant Protections do not forgive or excuse performance by the residential tenant of the lease terms, including, but not limited to, the requirement to pay rent on the terms set forth in the tenant's lease.

7. Except as expressly stated herein, all other terms and conditions of the Forbearance Agreement remain in full force and effect and Borrower hereby ratifies and affirms all representations, certifications, and agreements within the Loan Documents and the Forbearance Agreement.

For each month of the Forbearance Period from December 2021 through May 2022, Borrower agrees to remit to Servicer (i) all Imposition Deposits and Replacement Reserve Deposits due under the Note for such month, <u>and</u> the greater of (ii) all


© 2022 Fannie Mae. Trademarks of Fannie Mae. 

excess NOI from the Property for such month, and (iii) one hundred percent (100%) of the monthly interest due under the Note for such month (the "Remittance Amount"). The Remittance Amount must be received by Servicer no later than the 10th calendar day of the month following the month reported for. For example, the Remittance Amount for the period ending December 2021, must be received by Servicer on or before January 10, 2022.

8. Notwithstanding Fannie Mae's agreement to forbear from exercising its rights and remedies, and the acceptance of any partial payments at any time by the Servicer, the Note remains in default, and Fannie Mae does not waive any defaults set forth in this letter, or any other defaults which may exist or arise under the Note and any Loan Document executed in connection with the Note. This Agreement is to evidence Fannie Mae's and Borrower's continued agreement for forbearance and does not, and should not be deemed to, amend or modify the Note, the other Loan Documents or Borrower's obligations thereunder. Acceptance of late payments does not imply that any future late payments will be accepted by Fannie Mae or Servicer, and shall not be deemed a waiver of Fannie Mae's right to reject late payments, assess late charges, charge a default rate of interest, or prevent Fannie Mae from exercising any right, remedy, or power available to Fannie Mae, including, without limitation, all rights, remedies, and powers granted under the Note and any Loan Documents and at law or in equity.

9. This Agreement may be signed or executed using electronic signatures. This Agreement may be executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. Each executed counterpart (and any copy of an executed counterpart that is an electronic record) shall be deemed an original, and all such counterparts shall constitute one and the same agreement. An electronic or other copy of a signed document shall be considered as effective as an original. By signing this Agreement, Borrower agrees that Fannie Mae and Servicer may deliver communications electronically, that this Agreement, other Loan Documents, and any communications may, at Fannie Mae and Servicer's option, be signed or executed using electronic signatures, and that the use of electronic records and signatures will be in place of written documents and handwritten signatures. If Borrower executes this Agreement electronically, Borrower agrees that the electronic mark affixed to this Agreement constitutes the signature of an individually legally authorized to act on behalf of Borrower and will be enforceable as and to the full extent of a hand-written signature.

**[NO FURTHER TEXT ON THIS PAGE. SIGNATURES FOLLOW.]**


© 2022 Fannie Mae. Trademarks of Fannie Mae.

If you have any questions regarding this matter, please do not hesitate to call Joel Shaddox at 972.861.6798 or email at joel_shaddox@fanniemae.com.

Sincerely,

**Fannie Mae**

By: ______________________________
Name: Roy E. Miller
Title: Assistant Vice President

**BORROWER ACCEPTANCE:**

ACCEPTED AND AGREED this ___ day of January, 2022. ("Effective Date")

**KRCM ASTORIA PORTFOLIO CORP.,**
a New York corporation

By: ______________________________
Name: Rajnattie Persaud
Title: President


© 2022 Fannie Mae. Trademarks of Fannie Mae. (Revised 8/11/2020)

# Forbearance Agreement and Acknowledgment of Default

This Forbearance Agreement and Acknowledgment of Default (the "Agreement") is made this 19th day of July 2024 (the "Execution Date") between Federal National Mortgage Association ("Fannie Mae"), KRCM Astoria Portfolio Corporation ("Borrower"), and Rajmattie Persaud (the "Guarantor," and collectively with Fannie Mae and the Borrower, the "Parties," or individually, a "Party").

## RECITALS

WHEREAS on or about April 4, 2017, the Borrower executed an Amended and Restated Multifamily Note (the "Note") for the benefit of Greystone Servicing Corporation, Inc. ("Greystone" or the "Servicer"), the original lender under the Note agreeing, among other things, to pay the holder of the Note the sum of $34,700,000.00 plus all amounts accruing thereon in accordance with the Loan Documents, as such term is defined herein (the "Loan");

WHEREAS, on or about April 4, 2017, the Borrower executed a Multifamily Loan and Security Agreement (the "Loan Agreement") governing the Loan;

WHEREAS, pursuant to Note and Loan Agreement, the Borrower was required to make monthly payments on the Loan on the first day of each month from June 1, 2017 until the entire unpaid amount was paid (the "Monthly Payments"), with the principal sum and all accrued but unpaid interest under the Note being due and payable on the maturity date of May 1, 2024;

WHEREAS, on or about April 4, 2017, the Guarantor executed a Guaranty of Non-Recourse Obligations (the "Guaranty");

WHEREAS, in order to secure its indebtedness under the Note, on or about April 4, 2017, the Borrower executed a Multifamily Mortgage, Assignment of Rents and Security Agreement and Fixture Filing (the "Mortgage Agreement," and together with the Note, Loan Agreement, Guaranty, and all attachments thereto and assignments thereof, the "Loan Documents") pursuant to which it mortgaged to Greystone the real property and improvements located at 23-05 30th Avenue, Astoria, New York 11102; 23-15 30th Avenue, Astoria, New York 11102; and 21-80 38th Street, Astoria, New York 11105 (collectively, the "Property");

WHEREAS, on or about April 4, 2017, Greystone assigned each of the Loan Documents to Fannie Mae;

WHEREAS, prior to the Event of Default (as defined herein), the Parties entered into seven forbearance agreements whereby Fannie Mae agreed to forbear from exercising its rights and remedies under the Loan Documents for Borrower's failure to make the Monthly Payments during the 26-month forbearance period from April 1, 2020 to May 31, 2022 governed by: (i) Forbearance Agreement dated May 6, 2020; (ii) Forbearance Extension Form dated July 27, 2020; (iii) Extension of Forbearance Agreement and Non-Waiver dated November 2020; (iv) Extension of Forbearance Agreement and Non-Waiver dated April 14, 2021; (v) Extension of Forbearance Agreement and Non-Waiver dated June 25, 2021; (vi) Extension of Forbearance Agreement and Non-Waiver dated September 24, 2021; and (vii) Extension of Forbearance Agreement and Non-Waiver dated January 3, 2022 (collectively, the "Preceding Forbearance Agreements" governing the "Forborne Monthly Payments");

WHEREAS, prior to the maturity of the Loan, the Borrower was required to make monthly payments under the Preceding Forbearance Agreements (the "Monthly Forbearance Payments");

WHEREAS, the Borrower failed to make payment of all amounts due upon maturity of the Loan on May 1, 2024 (the "Maturity Date"), and continuing to the present;

WHEREAS, each failure to make a Monthly Payment as due, including the Borrower's failure to pay all amounts due upon maturity of the Loan, constitutes an event of default under the Loan Documents (the "Event of Default"), entitling Plaintiff to exercise all its rights and remedies under the Loan Documents, including declaring the entire amount of the indebtedness immediately due and payable, instituting judicial foreclosure proceedings, and obtaining the *ex parte* appointment of a receiver;

WHEREAS, on or about May 21, 2024, Fannie Mae sent Borrower a letter notifying it that it was in default of its obligations under the Loan Documents by virtue of its failure to make the payment due upon the Maturity Date;

WHEREAS, on or about June 4, 2024, the Borrower, Guarantor, Fannie Mae, and Greystone (as Loan servicer) entered into a pre-negotiation letter ("PNL"), in order to discuss the possibility of a consensual resolution of the Borrower's Event of Default;

NOW, THEREFORE, in consideration of the promises, covenants, representations, and releases contained herein, and for good and valuable consideration, the receipt and sufficiency of which each Party hereby acknowledges, the Parties agree as follows:

1. Forbearance Fee.

   a. Borrower shall make one payment of $200,000 to Servicer as a fee ("Forbearance Fee") by July 19, 2024. The failure to make the Forbearance Payment on or prior to the date it is due constitutes a default under this Agreement, unless and until such default is waived in writing by Fannie Mae.

   b. Notwithstanding the receipt by Servicer of the Forbearance Fee hereunder, the Note remains in default and Fannie Mae does not waive the Event of Default or any other defaults that may exist or arise under the Loan Documents. This Agreement, and Servicer and/or Fannie Mae's acceptance of Forbearance Fee hereunder, does not, and should not be deemed to, amend or modify any of the Loan Documents, the Borrower's obligations thereunder, or Fannie Mae's rights and remedies thereunder.

2. Forbearance. Fannie Mae hereby agrees to forbear from exercising any of its rights and remedies under the Loan Documents, including pursuing a foreclosure action, commencing on the Execution Date and continuing until October 31, 2024 (the "Expiration Date" and the period from the Execution Date to the Expiration Date, the "Forbearance Period") so long as Borrower commits no default or breach of this Agreement.

3. Borrower Forbearance Requirements.

   a. On or before July 22, 2024, Borrower shall make payment to the Servicer of the monthly amount that had been due and owing under the Loan Documents for interest, principal, tax escrow, insurance escrow, and replacement reserves (the

"Monthly Payment") and the Monthly Forbearance Payment for the month of July 2024 in the total amount of $295,685.25. Such amount shall be applied to the total indebtedness due under the Loan Documents.

b. During the Forbearance Period, the Borrower shall make additional Monthly Payments and Monthly Forbearance Payments to the Servicer by the 15th of each month (i.e., August 15, 2024, September 15, 2024, and October 15, 2024) in the total amount of $295,685.25 per payment. Such amounts shall be applied to the total indebtedness due under the Loan Documents.

c. The Borrower shall submit an executed loan application to the Servicer no later than July 22, 2024 providing for the complete refinancing, payoff, or other satisfaction, in full, of all amounts due and owing under the Loan Documents (the "Loan Application"). The Loan Application shall include: (i) a fully executed application for a loan to refinance, payoff, or otherwise satisfy in full the mortgage debt with a multifamily lender, and (ii) evidence that the Borrower has paid all required deposits and fees to its new lender, thereby commencing the underwriting of the new loan.

d. The Borrower shall provide the following materials and information to Fannie Mae and the Servicer no later than July 22, 2024:

   i. Detailed year-end 2023 income statements and trailing 12-month income statements (through June 2024) for: (a) the Property, (b) the Hempstead Portfolio, and (c) the Fordham Towers & Fulton Towers.

   ii. Year-end 2023 rent rolls and July 2024 rent rolls for: (a) the Property, (b) the Hempstead Portfolio, and (c) the Fordham Towers & Fulton Towers.

   iii. Current personal financial statements for Guarantor and Karan Singh, setting forth, among other things, liquidity, net worth, and annual income.

   iv. Current statement of all real estate owned by Guarantor and Karan Singh.

e. For avoidance of all conceivable doubt, the payment of the amounts due and provision of documents called for under this section, and/or Fannie Mae's acceptance thereof, in no way alters, amends, eliminates, or changes any right of Fanne Mae, including as to the Loan Documents or the Loan which remains in default. The obligations set forth in this section are consideration solely for Fannie Mae's agreement to enter into this Agreement, and Fannie Mae's acceptance thereof does not, and should not be deemed to, amend or modify any of the Loan Documents, the Borrower's obligations thereunder, or Fannie Mae's rights and remedies thereunder.

4. Loan Payoff.

   a. The Borrower shall repay the Loan in full no later than October 31, 2024, which includes, but is not limited to, all amounts due under the Loan Documents, as well as attorneys' fees, expenses, and default interest.

b. In order to cause a pay off of the Loan pursuant to this Section, on or prior to October 15, 2024, the Borrower shall: (i) request a statement from Servicer ("Pay Off Statement") listing the payment amount that is required in order to pay off the Loan as of the Borrower's intended payment date ("Pay Off Payment Date"), which the Servicer shall provide within ten days of such request; and (ii) make payment to the Servicer of the amount listed in the Pay Off Statement ("Pay Off Amount") on or before the Pay Off Payment Date.

c. Unless and until the Pay Off Amount is received by Servicer, Borrower shall not have complied with this Section 4 of the Agreement. The Pay Off Amount will include all amounts due and owing under the Loan Documents including but not limited to all Forborne Monthly Payments, all costs and expenses due under Section 11 of the Note and Section 43 of the Mortgage Agreement, including all legal fees and costs incurred in connection with enforcing and collecting amounts due under the Loan Documents, default interest accruing since May 1, 2024, and late fees.

5. Acknowledgement of Default. The Borrower and Guarantor hereby acknowledge that the Borrower is indebted to Fannie Mae for all amounts presently unpaid and outstanding under the Loan Documents without defense, setoff, deduction, or counterclaim of any kind whatsoever. The Borrower and Guarantor further acknowledge the occurrence of the Event of Default and agree that the occurrence of the Event of Default entitles Plaintiff to foreclose upon the Property, subject to Fannie Mae's agreement to forbear from foreclosing so long as the Borrower complies with the terms of this Agreement. The Borrower and Guarantor further acknowledge and agree that they have no defense to foreclosure, or the appointment of a receiver, by Fannie Mae based on the Event of Default or otherwise.

6. Waiver and Release. The Borrower and Guarantor hereby waive any and all defenses, including affirmative defenses, and counterclaims that they could conceivably assert in connection with any foreclosure or receivership action by Fannie Mae or the Servicer. Borrower and Guarantor hereby re-affirm the waiver and release contained in Paragraph 3 of the PNL. Borrower and Guarantor, on behalf of themselves and, as applicable, the Borrower's officers, directors, predecessors, successors in interest, assigns, affiliates, insurers, shareholders, attorneys, agents, and employees, past and present, in any and all capacities (individually and collectively, the "Releasing Parties"), hereby waive, relieve, release, and forever discharge Fannie Mae and Servicer, together with their respective officers, directors, employees, successors, assigns, agents, and attorneys (collectively, the "Released Parties") of and from any and all rights, claims, counterclaims, complaints, debts, liabilities, demands, obligations, promises, damages, causes of action, and claims for relief of whatever kind or character, whether known or unknown, which any of the Releasing Parties may have had or asserted, may now have or assert, or may hereafter have or assert against the Released Parties, or any of them, arising out of or based on any facts, circumstances, issues, services, advice, or the like, occurring from the beginning of time through the date hereof that relate to, arise under, or concern the Property, the Loan, the Loan Documents, and all other subject matters related thereto. Notwithstanding anything contained herein, the release described in this section shall not apply to any of the Parties' obligations under this Agreement.

7. Default Under This Agreement.

a. The Parties agree that, in the event of failure to repay the Loan in full by October 31, 2024, the Loan shall become fully recourse to the Guarantor consistent with the full recourse provisions of Section 3.02(b) of the Loan Agreement, Section 5 of the Note, and the Guaranty.

b. If the Borrower defaults on any of its obligations under this Agreement, including Sections 1, 3, and 4 hereof, then (i) Fannie Mae shall, with no notice to the Borrower, be permitted immediately to prosecute a foreclosure action, including seeking a receiver, with Borrower continuing to remain liable for all costs and expenses due under the Loan Documents, including all legal fees and costs incurred in connection with enforcing and collecting amounts due under the Loan Documents and prosecuting a foreclosure action, (ii) the Borrower and Guarantor agree to consent to and not oppose or otherwise interfere with the foreclosure of the property, including any motion to appoint a receiver, any default judgment motion, and summary judgment motion, and/or entry of a Judgment of Foreclosure and Sale, and (iii) the Borrower and Guarantor agree not to raise or assert any defenses to foreclosure (including affirmative defenses), or assert any counter- or cross-claims.

8. Power to Execute. Each of the persons executing this Agreement on behalf of a Party hereto represents and warrants that he or she has full power and authority from the Party he or she purports to represent to execute and deliver this Agreement on behalf of such Party and that all necessary resolutions, authorizations, and/or other necessary formalities have been obtained or accomplished. Each of the persons executing this Agreement on behalf of a Party hereto further represents and warrants that each Party's execution and performance under this Agreement shall not constitute a breach of any agreement, understanding, order, judgment, or decree to which the Party is a party or by which the Party may be bound, and to the best of each Party's knowledge does not constitute a violation of any provisions of law, state, federal, or municipal, statutory or otherwise, to which a Party is or may become subject.

9. No Assignment. Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement. Each Party further agrees that this Agreement is not assignable by any Party without the written consent of the other Party, which consent shall not be unreasonably withheld.

10. Further Assurances. The Parties each agree to execute all such further documents as shall be reasonably necessary, required, or helpful to carry out the terms, provisions, and conditions of this Agreement.

11. Good Faith. This Agreement was negotiated by the Parties hereto at arm's length and in good faith. Each Party represents, warrants, and agrees that it has had the opportunity to consult with counsel of its choice regarding the meaning and legal effect of this Agreement and the advisability of making the agreements provided for herein, and fully understands the same, including any risks related thereto. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no presumption shall operate in favor of or against any Party by virtue of its role in drafting or not drafting

the terms and conditions set forth herein. The Borrower and Guarantor further affirm they have not relied upon any guidance from Fannie Mae or Servicer in their decision to enter into this Agreement, and they are not third-party beneficiaries of any certification of Servicer to Fannie Mae related to this Agreement or of any contract or agreement between Servicer and Fannie Mae.

12. Binding Effect. Upon the Execution Date, this Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the Parties hereto and their respective predecessors, successors, endorsees, transferees, heirs, beneficiaries, and assigns.

13. Waiver of Jury Trial. The Parties hereto waive any right to trial by jury in any action at law or in equity or in any other proceeding based on or pertaining to this Agreement.

14. Amendments and Modifications. No failure or delay on the part of any Party hereto in exercising any right, power, or remedy under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of such right, power, or remedy preclude any other right, power, or remedy under this Agreement. No amendment, modification, termination, or waiver of any provision of this Agreement, nor consent to any departure therefrom, shall in any event be effective unless the same shall be in writing making explicit reference to this Agreement, and shall be effective only in the specific instance and for the specific purpose for which given and executed by the Parties hereto.

15. Counterparts. This Agreement may be executed in counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this document by email in portable document format (pdf) shall be as effective as delivery of a manually delivered counterpart of this document.

16. Notice. All notices and other communications relating to this Agreement shall be in writing, addressed to the Parties, respectively, at their respective addresses set forth below, or at such other address as any may give notice to each other Party hereto as herein provided. Any notice, request, or communication hereunder shall be deemed to have been given three (3) business days after deposit in the mail, postage prepaid, or in the case of hand delivery or delivery by overnight courier, when delivered, addressed as aforesaid, or in the case of email, on the date that the email is transmitted to the recipient, provided, however, that notice of a change of address shall be deemed to have been given only when actually received by the Party to which it is addressed.

a. To Fannie Mae:

Dean L. Chapman Jr., Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel.: (212) 872-8095
dchapman@akingump.com

b. To Borrower and/or Guarantor:

KRCM Astoria Portfolio Corporation
c/o Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

17. Governing Law. The Parties hereto acknowledge and agree that the laws of the State of New York shall govern the construction of this Agreement and the rights, remedies, warranties, representations, covenants, and provisions hereof without giving effect to the conflict of laws rules of the State of New York.

18. Exclusive Jurisdiction. The federal and state courts in the jurisdiction where the Property is located shall have exclusive jurisdiction to interpret and enforce this Agreement and to resolve any disputes relating to or concerning this Agreement. The Parties agree to consult in good faith with each other before seeking judicial relief.

19. Entire Agreement. This Agreement embodies the entire agreement of the Parties hereto with regard to the subject matter hereof and any prior representations and agreements with regard to the same, written or oral, are superseded in their entirety hereby. Headings are for convenience of reference only and shall not affect construction of this Agreement.

20. Successors and Affiliates. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective affiliates, subsidiaries, divisions, predecessors, successors, transferees, officers, directors, employees, partners, direct or indirect owners and equity holders, members, or other interest-holders in any of the same (in their capacity as such).

**THIS PORTION OF THE PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

By: ______________________

Print: Roy E. Miller

Title: Assistant Vice President

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**KRCM Astoria Portfolio Corporation**

By: Rajmattie Persaud

Print: RAJMATTIE PERSAUD

Title: PRESIDENT

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**Rajmattie Persaud**

By: ______________________

Print: RAJMATTIE PERSAUD

Title: PRESIDENT

# First Amended Forbearance Agreement and Acknowledgment of Default

This First Amended Forbearance Agreement and Acknowledgment of Default (the "Agreement") is made as of the 1st day of November 2024 (the "Execution Date") between Federal National Mortgage Association ("Fannie Mae"), KRCM Astoria Portfolio Corporation ("Borrower"), and Rajmattie Persaud (the "Guarantor," and collectively with Fannie Mae and the Borrower, the "Parties," or individually, a "Party").

## RECITALS

WHEREAS on or about April 4, 2017, the Borrower executed an Amended and Restated Multifamily Note (the "Note") for the benefit of Greystone Servicing Corporation, Inc. ("Greystone" or the "Servicer"), the original lender under the Note agreeing, among other things, to pay the holder of the Note the sum of $34,700,000.00 plus all amounts accruing thereon in accordance with the Loan Documents, as such term is defined herein (the "Loan");

WHEREAS, on or about April 4, 2017, the Borrower executed a Multifamily Loan and Security Agreement (the "Loan Agreement") governing the Loan;

WHEREAS, pursuant to Note and Loan Agreement, the Borrower was required to make monthly payments on the Loan on the first day of each month from June 1, 2017 until the entire unpaid amount was paid (the "Monthly Payments"), with the principal sum and all accrued but unpaid interest under the Note being due and payable on the maturity date of May 1, 2024;

WHEREAS, on or about April 4, 2017, the Guarantor executed a Guaranty of Non-Recourse Obligations (the "Guaranty");

WHEREAS, in order to secure its indebtedness under the Note, on or about April 4, 2017, the Borrower executed a Multifamily Mortgage, Assignment of Rents and Security Agreement and Fixture Filing (the "Mortgage Agreement," and together with the Note, Loan Agreement, Guaranty, and all attachments thereto and assignments thereof, the "Loan Documents") pursuant to which it mortgaged to Greystone the real property and improvements located at 23-05 30th Avenue, Astoria, New York 11102; 23-15 30th Avenue, Astoria, New York 11102; and 21-80 38th Street, Astoria, New York 11105 (collectively, the "Property");

WHEREAS, on or about April 4, 2017, Greystone assigned each of the Loan Documents to Fannie Mae;

WHEREAS, prior to the Event of Default (as defined herein), the Parties entered into seven forbearance agreements whereby Fannie Mae agreed to forbear from exercising its rights and remedies under the Loan Documents for Borrower's failure to make the Monthly Payments during the 26-month forbearance period from April 1, 2020 to May 31, 2022 governed by: (i) Forbearance Agreement dated May 6, 2020; (ii) Forbearance Extension Form dated July 27, 2020; (iii) Extension of Forbearance Agreement and Non-Waiver dated November 2020; (iv) Extension of Forbearance Agreement and Non-Waiver dated April 14, 2021; (v) Extension of Forbearance Agreement and Non-Waiver dated June 25, 2021; (vi) Extension of Forbearance Agreement and Non-Waiver dated September 24, 2021; and (vii) Extension of Forbearance Agreement and Non-Waiver dated January 3, 2022 (collectively, the "Preceding Forbearance Agreements" governing the "Forborne Monthly Payments");

WHEREAS, prior to the maturity of the Loan, the Borrower was required to make monthly payments under the Preceding Forbearance Agreements (the "Monthly Forbearance Payments");

WHEREAS, the Borrower failed to make payment of all amounts due upon maturity of the Loan on May 1, 2024 (the "Maturity Date"), and continuing to the present;

WHEREAS, each failure to make a Monthly Payment as due, including the Borrower's failure to pay all amounts due upon maturity of the Loan, constitutes an event of default under the Loan Documents (the "Event of Default"), entitling Plaintiff to exercise all its rights and remedies under the Loan Documents, including declaring the entire amount of the indebtedness immediately due and payable, instituting judicial foreclosure proceedings, and obtaining the *ex parte* appointment of a receiver;

WHEREAS, on or about May 21, 2024, Fannie Mae sent Borrower a letter notifying it that it was in default of its obligations under the Loan Documents by virtue of its failure to make the payment due upon the Maturity Date;

WHEREAS, on or about June 4, 2024, the Borrower, Guarantor, Fannie Mae, and Greystone (as Loan servicer) entered into a pre-negotiation letter ("PNL"), in order to discuss the possibility of a consensual resolution of the Borrower's Event of Default;

WHEREAS, on or about July 19, 2024, the Borrower, Guarantor and Fannie Mae executed a Forbearance Agreement and Acknowledgment of Default pursuant to which Fannie Mae agreed to forbear from exercising its rights and remedies under the Loan Documents until October 31, 2024 (the "Original Forbearance Agreement");

WHEREAS, the Borrower failed to perform under the Original Forbearance Agreement, but has requested additional time to pay off all amounts due and owing under the Loan Documents;

NOW, THEREFORE, in consideration of the promises, covenants, representations, and releases contained herein, and for good and valuable consideration, the receipt and sufficiency of which each Party hereby acknowledges, the Parties agree as follows:

1. Forbearance Fee.

   a. Borrower shall make three monthly payments of $20,000 to Servicer as a fee (each such payment, a "Forbearance Fee") for each month during the Forbearance Period (as defined herein). The Forbearance Fee for the month of November shall be due on of before December 6, 2024. The Forbearance Fees for the months of December and January shall be due on or before December 15, 2024, and January 15, 2025, respectively. The failure to pay any Forbearance Fee on or prior to the date it is due constitutes a default under this Agreement, unless and until such default is waived in writing by Fannie Mae.

   b. Notwithstanding the receipt by Servicer of any Forbearance Fee hereunder, the Note remains in default and Fannie Mae does not waive the Event of Default or any other defaults that may exist or arise under the Loan Documents. This Agreement, and Servicer and/or Fannie Mae's acceptance of any Forbearance Fee hereunder, does not, and should not be deemed to, amend or modify any of the Loan

Documents, the Borrower's obligations thereunder, or Fannie Mae's rights and remedies thereunder.

2. Forbearance. Fannie Mae hereby agrees to forbear from exercising any of its rights and remedies under the Loan Documents, including pursuing a foreclosure action, commencing on the Execution Date and continuing until February 1, 2025 (the "Expiration Date" and the period from the Execution Date to the Expiration Date, the "Forbearance Period") so long as Borrower commits no default or breach of this Agreement.

3. Borrower Forbearance Requirements.

   a. On or before December 2, 2024, Borrower shall make payment to the Servicer of the monthly amount that had been due and owing under the Loan Documents for interest, principal, tax escrow, insurance escrow, and replacement reserves (the "Monthly Payment") and the Monthly Forbearance Payment for the month of November 2024 in the total amount of $295,685.25. Such amount shall be applied to the total indebtedness due under the Loan Documents.

   b. During the Forbearance Period, the Borrower shall make additional Monthly Payments and Monthly Forbearance Payments to the Servicer by the 15th of each month (i.e., December 15, 2024 and January 15, 2025) in the total amount of $295,685.25 per payment. Such amounts shall be applied to the total indebtedness due under the Loan Documents.

   c. For avoidance of all conceivable doubt, the payment of the amounts due and provision of documents called for under this section, and/or Fannie Mae's acceptance thereof, in no way alters, amends, eliminates, or changes any right of Fanne Mae, including as to the Loan Documents or the Loan which remains in default. The obligations set forth in this section are consideration solely for Fannie Mae's agreement to enter into this Agreement, and Fannie Mae's acceptance thereof does not, and should not be deemed to, amend or modify any of the Loan Documents, the Borrower's obligations thereunder, or Fannie Mae's rights and remedies thereunder.

4. Loan Payoff.

   a. The Borrower shall repay the Loan in full no later than February 1, 2025, which includes, but is not limited to, all amounts due under the Loan Documents, as well as attorneys' fees, expenses, and default interest.

   b. In order to cause a pay off of the Loan pursuant to this Section, on or prior to January 15, 2025, the Borrower shall: (i) request a statement from Servicer ("Pay Off Statement") listing the payment amount that is required in order to pay off the Loan as of the Borrower's intended payment date ("Pay Off Payment Date"), which the Servicer shall provide within ten days of such request; and (ii) make payment to the Servicer of the amount listed in the Pay Off Statement ("Pay Off Amount") on or before the Pay Off Payment Date.

c. Unless and until the Pay Off Amount is received by Servicer, Borrower shall not have complied with this Section 4 of the Agreement. The Pay Off Amount will include all amounts due and owing under the Loan Documents including but not limited to all Forborne Monthly Payments, all costs and expenses due under Section 5 of the Mortgage and Section 4.02 of the Loan Agreement, including all legal fees and costs incurred in connection with enforcing and collecting amounts due under the Loan Documents, default interest accruing since May 1, 2024, and late fees.

5. Acknowledgement of Default. The Borrower and Guarantor hereby acknowledge that the Borrower is indebted to Fannie Mae for all amounts presently unpaid and outstanding under the Loan Documents without defense, setoff, deduction, or counterclaim of any kind whatsoever. The Borrower and Guarantor further acknowledge the occurrence of the Event of Default and agree that the occurrence of the Event of Default entitles Plaintiff to foreclose upon the Property, subject to Fannie Mae's agreement to forbear from foreclosing so long as the Borrower complies with the terms of this Agreement. The Borrower and Guarantor further acknowledge and agree that they have no defense to foreclosure, or the appointment of a receiver, by Fannie Mae based on the Event of Default or otherwise.

6. Waiver and Release. The Borrower and Guarantor hereby waive any and all defenses, including affirmative defenses, and counterclaims that they could conceivably assert in connection with any foreclosure or receivership action by Fannie Mae or the Servicer. Borrower and Guarantor hereby re-affirm the waiver and release contained in Paragraph 3 of the PNL. Borrower and Guarantor, on behalf of themselves and, as applicable, the Borrower's officers, directors, predecessors, successors in interest, assigns, affiliates, insurers, shareholders, attorneys, agents, and employees, past and present, in any and all capacities (individually and collectively, the "Releasing Parties"), hereby waive, relieve, release, and forever discharge Fannie Mae and Servicer, together with their respective officers, directors, employees, successors, assigns, agents, and attorneys (collectively, the "Released Parties") of and from any and all rights, claims, counterclaims, complaints, debts, liabilities, demands, obligations, promises, damages, causes of action, and claims for relief of whatever kind or character, whether known or unknown, which any of the Releasing Parties may have had or asserted, may now have or assert, or may hereafter have or assert against the Released Parties, or any of them, arising out of or based on any facts, circumstances, issues, services, advice, or the like, occurring from the beginning of time through the date hereof that relate to, arise under, or concern the Property, the Loan, the Loan Documents, and all other subject matters related thereto. Notwithstanding anything contained herein, the release described in this section shall not apply to any of the Parties' obligations under this Agreement.

7. Default Under This Agreement.

a. The Parties agree that, in the event of failure to repay the Loan in full by February 1, 2025, the Loan shall become fully recourse to the Guarantor consistent with the full recourse provisions of Section 3.02(b) of the Loan Agreement, Section 5 of the Note, and the Guaranty.

b. If the Borrower defaults on any of its obligations under this Agreement, including Sections 1, 3, and 4 hereof, then (i) Fannie Mae shall, with no notice to the Borrower, be permitted immediately to prosecute a foreclosure action, including seeking a

receiver, with Borrower continuing to remain liable for all costs and expenses due under the Loan Documents, including all legal fees and costs incurred in connection with enforcing and collecting amounts due under the Loan Documents and prosecuting a foreclosure action, (ii) the Borrower and Guarantor agree to consent to and not oppose or otherwise interfere with the foreclosure of the property, including any motion to appoint a receiver, any default judgment motion, and summary judgment motion, and/or entry of a Judgment of Foreclosure and Sale, and (iii) the Borrower and Guarantor agree not to raise or assert any defenses to foreclosure (including affirmative defenses), or assert any counter- or cross-claims.

8. Power to Execute. Each of the persons executing this Agreement on behalf of a Party hereto represents and warrants that he or she has full power and authority from the Party he or she purports to represent to execute and deliver this Agreement on behalf of such Party and that all necessary resolutions, authorizations, and/or other necessary formalities have been obtained or accomplished. Each of the persons executing this Agreement on behalf of a Party hereto further represents and warrants that each Party's execution and performance under this Agreement shall not constitute a breach of any agreement, understanding, order, judgment, or decree to which the Party is a party or by which the Party may be bound, and to the best of each Party's knowledge does not constitute a violation of any provisions of law, state, federal, or municipal, statutory or otherwise, to which a Party is or may become subject.

9. No Assignment. Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement. Each Party further agrees that this Agreement is not assignable by any Party without the written consent of the other Party, which consent shall not be unreasonably withheld.

10. Further Assurances. The Parties each agree to execute all such further documents as shall be reasonably necessary, required, or helpful to carry out the terms, provisions, and conditions of this Agreement.

11. Good Faith. This Agreement was negotiated by the Parties hereto at arm's length and in good faith. Each Party represents, warrants, and agrees that it has had the opportunity to consult with counsel of its choice regarding the meaning and legal effect of this Agreement and the advisability of making the agreements provided for herein, and fully understands the same, including any risks related thereto. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no presumption shall operate in favor of or against any Party by virtue of its role in drafting or not drafting the terms and conditions set forth herein. The Borrower and Guarantor further affirm they have not relied upon any guidance from Fannie Mae or Servicer in their decision to enter into this Agreement, and they are not third-party beneficiaries of any certification of Servicer to Fannie Mae related to this Agreement or of any contract or agreement between Servicer and Fannie Mae.

12. Binding Effect. Upon the Execution Date, this Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the Parties hereto and their respective predecessors, successors, endorsees, transferees, heirs, beneficiaries, and assigns.

13. Waiver of Jury Trial. The Parties hereto waive any right to trial by jury in any action at law or in equity or in any other proceeding based on or pertaining to this Agreement.

14. Amendments and Modifications. No failure or delay on the part of any Party hereto in exercising any right, power, or remedy under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of such right, power, or remedy preclude any other right, power, or remedy under this Agreement. No amendment, modification, termination, or waiver of any provision of this Agreement, nor consent to any departure therefrom, shall in any event be effective unless the same shall be in writing making explicit reference to this Agreement, and shall be effective only in the specific instance and for the specific purpose for which given and executed by the Parties hereto.

15. Counterparts. This Agreement may be executed in counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page of this document by email in portable document format (pdf) shall be as effective as delivery of a manually delivered counterpart of this document.

16. Notice. All notices and other communications relating to this Agreement shall be in writing, addressed to the Parties, respectively, at their respective addresses set forth below, or at such other address as any may give notice to each other Party hereto as herein provided. Any notice, request, or communication hereunder shall be deemed to have been given three (3) business days after deposit in the mail, postage prepaid, or in the case of hand delivery or delivery by overnight courier, when delivered, addressed as aforesaid, or in the case of email, on the date that the email is transmitted to the recipient, provided, however, that notice of a change of address shall be deemed to have been given only when actually received by the Party to which it is addressed.

a. To Fannie Mae:

Dean L. Chapman Jr., Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel.: (212) 872-8095
dchapman@akingump.com

b. To Borrower and/or Guarantor:

KRCM Astoria Portfolio Corporation
c/o Rajmattie Persaud
45 Jackson Street
Hempstead, New York 11550
krcmreal@gmail.com

17. Governing Law. The Parties hereto acknowledge and agree that the laws of the State of New York shall govern the construction of this Agreement and the rights, remedies, warranties, representations, covenants, and provisions hereof without giving effect to the conflict of laws rules of the State of New York.

18. Exclusive Jurisdiction. The federal and state courts in the jurisdiction where the Property is located shall have exclusive jurisdiction to interpret and enforce this Agreement and to resolve any disputes relating to or concerning this Agreement. The Parties agree to consult in good faith with each other before seeking judicial relief.

19. Entire Agreement. This Agreement embodies the entire agreement of the Parties hereto with regard to the subject matter hereof and any prior representations and agreements with regard to the same, written or oral, are superseded in their entirety hereby. Headings are for convenience of reference only and shall not affect construction of this Agreement.

20. Successors and Affiliates. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective affiliates, subsidiaries, divisions, predecessors, successors, transferees, officers, directors, employees, partners, direct or indirect owners and equity holders, members, or other interest-holders in any of the same (in their capacity as such).

**THIS PORTION OF THE PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

By: ______________________________

Print: ______________________________

Title: ______________________________

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**Rajmattie Persaud**

By: Rajmattie Persaud

Print: RAJMATTIE PERSAUD

Title: PRESIDENT

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date and year shown above.

**KRCM Astoria Portfolio Corporation**

By: Rajmattie Persaud

Print: RAJMATTIE PERSAUD

Title: PRESIDENT