UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

KRCM ASTORIA PORTFOLIO CORP.,

Debtor.
--------------------------------------------------------x

Chapter 11
Case No. 25-44859 (ESS)

**STIPULATION AND ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, PAYMENT OF ADEQUATE PROTECTION AND FOR RELATED RELIEF**

This Stipulation and Order Authorizing Debtor's Use of Cash Collateral, Payment of Adequate Protection and for Related Relief (the "Stipulation") is made as of January 22, 2026, by and between Federal National Mortgage Association ("Fannie Mae" or the "Prepetition Secured Party") and KRCM Astoria Portfolio Corp. (the "Debtor").

**R E C I T A L S**[1]

A. The Debtor owns real property located at 23-05 30th Avenue, Astoria, NY 11102; 23-15 30th Avenue, Astoria, NY 11102; and 21-80 38th Street, Astoria, NY 11105 (the "Collateral Properties").

B. The Debtor executed a certain Consolidated, Amended and Restated Multifamily Note, dated on or about April 4, 2017, for the benefit of Greystone Servicing Corporation, Inc. ("Greystone"), the original lender under the note, in the principal amount of $34,700,000.00 (the "Note").

C. Simultaneous with the execution of the Note, to secure its obligations to Greystone pursuant to the Note against the Collateral Properties, the Debtor executed and delivered to Greystone a Multifamily Loan and Security Agreement (the "Security Agreement").

[1] All terms used but not defined herein shall have the meaning ascribed to them in the Loan Documents.

D. On or about April 4, 2017, the Debtor executed an Extension and Modification Agreement (the "EMA") thereby consolidating eight (8) pre-existing mortgages against the Collateral Properties into a single consolidated mortgage.

E. Pursuant to the EMA, the Debtor and Greystone entered into a Multifamily Mortgage, Assignment of Leases and Rent, Security Agreement and Fixture Filing (the "Mortgage Agreement") for the Collateral Properties, which was attached to the EMA as Exhibit C.

F. The Security Agreement, EMA, and Mortgage Agreement granted Greystone a security interest in the Collateral Properties of the Debtor, including, without limitation, all accounts receivable of Debtor (collectively, the "Collateral").

G. Fannie Mae filed a UCC-1 Financing Statement ("UCC") with the New York Department of State on April 13, 2017, thereby perfecting a lien over all items of personal property and fixtures located on, related to or used in connection with the Collateral. A continuation of the UCC was filed by Fannie Mae on or about November 23, 2021.

H. On or about April 4, 2017, Greystone assigned the Mortgage Agreement and Note to Fannie Mae via an Assignment of Security Instrument (the "Mortgage Assignment"). The Mortgage Assignment was recorded in the Office of the City Register of the City of New York as File No. 2017000154089.

I. On or about April 4, 2017, Greystone executed an Assignment of Collateral Agreements and Other Loan Documents to Fannie Mae, thereby assigning all other agreements executed in connection with Mortgage Agreement to Fannie Mae including the Security Agreement and guaranty of payment by the principal of the Debtor.

J. Collectively, the Note, Security Agreement, EMA, Mortgage Agreement, and Mortgage Assignment are hereinafter referred to as the "Loan Documents" (which, together, constitutes the "Prepetition Lien").

K. Pursuant to the Mortgage Agreement, the Debtor absolutely and unconditionally assigned and transferred to Fannie Mae all "Rents," as defined in the Mortgage Agreement. In return, Fannie Mae granted the Debtor a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Fannie Mae, to apply all Rents to pay the Monthly Debt Service Payments and other amounts due and payable under the Loan Documents, and to pay the costs and expenses of managing and maintaining the Property.

L. The Debtor defaulted by, *inter alia*, failing to pay the amounts due under the Note and other loan documents beginning with the payment due from April 1, 2020, to May 31, 2022. During this period, Greystone Servicing Corporation, Inc., in its capacity as loan servicer (the "Servicer"), acting on behalf of Fannie Mae, and the Debtor entered into seven separate forbearance agreements (the "Forbearance Agreements"). Under the Forbearance Agreements, Fannie Mae agreed to refrain from exercising its rights and remedies under the Loan Documents in exchange for the Debtor's acknowledgment of its default, waiver of claims and defenses, and acceptance of specific conditions set forth in the agreements. The Forbearance Agreements each expressly provided they did not modify the Maturity Date of the Loan.

M. On May 1, 2024, the Maturity Date, Borrower failed to pay all amounts due and owing under the Loan Documents, including the principal sum, all accrued but unpaid interest, and the outstanding monthly payments due pursuant to the Forbearance Agreements, as required under the Loan Documents, constituting a further default under the Loan Documents.

N. By virtue of the Debtor's defaults, its license to collect Rents at the Properties was terminated, and Fannie Mae is now entitled to all Rents as they become due and payable.

O. On October 8, 2025 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court.

P. As of October 8, 2025, Fannie Mae asserts that the Debtor is indebted to it in the total amount of $34,547,520.68 (the "Prepetition Indebtedness") comprising (i) unpaid principal in the amount of $31,027,549.28; (ii) accrued and unpaid interest at the nondefault rate in the amount of $2,065,366.01; (iii) accrued and unpaid interest at the default rate in the amount of $1,813,387.88; (iv) forbearance fees in the amount of $40,000.00; (v) a replacement reserve fee in the amount of $1,000.00; (vi) tax and insurance advances in the amount of $1,135,852.22; (vii) a broker price opinion fee in the amount of $10,500.00; (viii) legal fees incurred by Fannie Mae in connection with the enforcement of Fannie Mae's rights against the Debtor in the amount of $417,059.56; (ix) less suspense of $213,824.63; (x) less a replacement reserve balance of $0.10; and (xi) less swept funds to Fannie Mae in the amount of $1,749,369.54.

Q. The Debtor reserves its right to challenge accrued and unpaid interest at the default rate in the amount of $1,813,387.88 (the "Reservation").

R. Other than the amount subject to the Reservation, the Debtor is obligated to pay the Prepetition Indebtedness to Fannie Mae, and it has no right of offset or counterclaim or defense with respect hereto.

S. The Prepetition Indebtedness is secured by valid, perfected, enforceable first-priority liens on and security interests in Collateral.

T. The Debtor has immediate cash needs to run the day-to-day operations of its business including, without limitation, meeting payroll and paying other customary and necessary operating expenses.

U. The Debtor has requested Fannie Mae's consent to use income generated by Collateral ("Cash Collateral").

V. Fannie Mae has agreed to comply with the request of the Debtor regarding the use of Cash Collateral, but only upon certain terms and conditions satisfactory to both Fannie Mae and Debtor.

W. The Debtor and Fannie Mae desire to enter into this Stipulation to set forth in writing their understanding regarding this matter and agree to be bound by the terms and conditions set forth herein.

X. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

On the basis of and consistent with the foregoing, it is hereby **FOUND~~,~~** **~~ORDERED, DETERMINED AND DECREED~~** by the Court as follows:

1. Debtor admits, stipulates, and agrees that the foregoing Recitals are true and accurate.

2. Debtor admits, stipulates, acknowledges and agrees that each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against Debtor in accordance with its terms

3. Debtor admits, stipulates, acknowledges and agrees that as of the Petition Date, Debtor was justly and lawfully indebted and liable to Fannie Mae pursuant to the Loan

Documents in the aggregate amount of the Prepetition Indebtedness, other than the Reservation, without defense, counterclaim, or offset of any kind.

4. Debtor admits, stipulates, acknowledges and agrees that (i) the Prepetition Indebtedness, other than the Reservation, constitutes the legal, valid and binding obligation of Debtor, enforceable, subject to applicable bankruptcy law, in accordance with its terms, and (ii) no portion of the Prepetition Indebtedness, other than the Reservation, or any amounts paid to Fannie Mae or applied to the obligations owing under the Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and Debtor does not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Loan Documents, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, on or prior to the date hereof, against Fannie Mae, or its affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

5. Debtor admits, stipulates, acknowledges and agrees that Fannie Mae holds valid, perfected, and enforceable first-priority liens on and security interests in the Collateral, including without limitation the Cash Collateral, which liens are not subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attach, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

6. Debtor admits, stipulates, acknowledges and agrees that all cash, including cash proceeds, products, offspring, rents and profits of the Collateral held in any of Debtor's banking, checking or other deposit accounts with financial institutions as of the Petition Date or deposited into Debtor's banking, checking or other deposit accounts with financial institutions after the Petition Date (including deposits into accounts opened before or after the Petition Date), are Cash Collateral of Fannie Mae within the meaning of section 363(a) of the Bankruptcy Code. Fannie Mae is entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Collateral, including Cash Collateral for any diminution in the value thereof.

7. Fannie Mae is willing to consent to Debtor's limited use of Cash Collateral pursuant to the terms of this Order. Fannie Mae has made a good faith request for adequate protection of its interests in the Collateral. Fannie Mae is not an insider of Debtor. The terms and conditions of Debtor's use of Cash Collateral under this Stipulation were negotiated in good-faith and at arm's-length between the Debtor and Fannie Mae and are fair and reasonable under the circumstances, and good, adequate and sufficient cause has been shown for the entry of this Order. Among other things, the entry of this Order is critical to the continued administration of the Debtor's Chapter 11 Case. Pursuant to Bankruptcy Code sections 105, 361 and 363, Fannie Mae is hereby found to have acted in "good faith" in connection with the negotiations and entry of this Stipulation and is entitled to the protection provided under Bankruptcy Code section 363(m).

8. Fannie Mae consents to the Debtor's use of Cash Collateral subject to the terms of this Stipulation, specifically including:

a. Debtor may use Cash Collateral of Fannie Mae to pay for the ordinary and necessary postpetition operating expenses solely to the extent categorized in the monthly budget

attached hereto as **Exhibit "A"** (as may be modified from time to time by agreement of the parties, the "Monthly Budget"). Ordinary and necessary postpetition expenses shall be defined as those items set forth in the Monthly Budget and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than ten percent (10%). The Debtor shall obtain Fannie Mae's written permission before making or incurring any obligation or making or incurring any expenditures in excess of ten percent (10%) of the amount budgeted therefor.

b. The Debtor shall remain current on all postpetition obligations arising out of its ownership and/or operation of the Collateral.

c. Beginning on the first day of the first month following the Bankruptcy Court's approval of this Stipulation, and continuing thereafter, on the first day of each month thereafter, the Debtor shall remit $295,685.25 to Fannie Mae as adequate protection for the use of Cash Collateral (each an "Adequate Protection Payment"). All remissions of funds hereunder shall be applied by Fannie Mae in accordance with the Loan Documents. The Debtor shall maintain all remaining Cash Collateral in the DIP Operating Account (hereinafter defined).

d. The Debtor shall pay all of the out-of-pocket fees, costs and expenses of Fannie Mae, whether incurred prior to or after the Petition Date, including, without limitation, the reasonable and documented fees and expenses of Akin Gump Strauss Hauer & Feld LLP as counsel to Fannie Mae.

e. Without limiting the foregoing, the Debtor's right to use the Cash Collateral, and Fannie Mae's consent to such use, is further conditioned upon the Debtor's maintenance of the Collateral in a commercially reasonable standard. To that end, the Debtor specifically covenants that Debtor will not allow waste to occur with respect to the Collateral or any portion thereof, or cause the Collateral to fall into further disrepair.

9. The Debtor will set up and shall continue to maintain a "Debtor-In-Possession" or "DIP" bank account (the "DIP Operating Account"). As proceeds of the Collateral are received by the Debtor during the post-Petition Date period, they will be deposited into the DIP Operating Account. The Debtor's operating expenditures shall be paid solely from the DIP Operating Account and only in accordance with the terms of this Stipulation.

10. Adequate Protection Payments shall be made either by ACH or wire transfer to Fannie Mae pursuant to instructions provided by Fannie Mae to the Debtor.

11. The term of this Stipulation shall expire on the earlier to occur of (a) the date that is 60 days from the execution of this Stipulation or such later date upon which the Court fixes (the "Termination Date") or (b) the occurrence of an Event of Default hereunder that is not cured within any time-period permitted herein. The Termination Date may be extended from time to time upon (a) the written agreement of the Debtor and Fannie Mae, which parties shall be permitted to submit a Consent Order to the Court, without further notice or hearing, extending the Termination Date; provided, that the U.S. Trustee shall be notified of any extension of the Termination Date or (b) upon further order of this Court. In the event of termination of this Stipulation, the Debtor may not continue to use Cash Collateral except upon Fannie Mae's written consent or further order of the Court.

12. During the effective period of this Stipulation and thereafter, the Debtor shall not engage in any sale of the Collateral without Court approval.

13. During the term of the Stipulation, and except to the extent, if any, that they are modified by the terms of this Stipulation, the Debtor shall fully perform and comply with all of its covenants and agreements set forth in the Loan Documents, which are hereby reaffirmed and ratified by the Debtor.

14. Nothing contained herein shall prejudice or limit the rights of the Debtor to hereafter seek to use Cash Collateral without Fannie Mae's consent, or the rights of Fannie Mae to seek, and the Debtor's rights to oppose at any future time adequate protection pursuant to sections 361, 362, 363 or 364 of the Bankruptcy Code, any relief from the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, conversion or dismissal of the case, or any relief available to any of Fannie Mae under the Bankruptcy Code or the Loan Agreement. If the Debtor fails to comply with any term and/or condition of this Stipulation in any material respect, the required written consent of Fannie Mae to the continued use by the Debtor of the Cash Collateral in accordance with the terms and conditions of this Stipulation shall not constitute a waiver by Fannie Mae or the Debtor of any of its rights, or prevent or prejudice the Debtor or Fannie Mae from filing any proceedings or taking any action concerning the Debtor's use of the Cash Collateral.

15. All rights to surcharge any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon Debtor and all parties in interest in this Chapter 11 Case.

16. Fannie Mae shall be entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Party with respect to proceeds, products, offspring, rents and profits of any of the Collateral Properties and Collateral.

17. The Prepetition Secured Party shall not be subject to the equitable doctrine of "Marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable.

18. To the extent permitted by section 363(k) of the Bankruptcy Code, Fannie Mae shall have the right to credit bid under section 363(k) of the Bankruptcy Code all of its claims in connection with a sale of the Collateral under section 363 of the Bankruptcy Code or under a chapter 11 plan or otherwise.

19. The Court's Order approving this Stipulation shall constitute authorization, ratification and approval of any action taken by the Debtor or Fannie Mae in furtherance hereof, without further order of the Court.

20. Notwithstanding any reversal, stay, modification or vacatur of this Stipulation, any indebtedness, obligation or liability incurred by Debtor pursuant to this Stipulation arising prior to Fannie Mae's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Stipulation, and Fannie Mae shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Stipulation is and shall remain subject to the protection afforded under the Bankruptcy Code. In the event the provisions of this Stipulation are reversed, stayed, modified or vacated following any further hearing, such reversals modifications, stays or vacatur shall not affect the rights and priorities of Fannie Mae granted pursuant to this Stipulation.

21. Fannie Mae shall have the right, but not the obligation, to waive any of the rights, remedies, or powers granted to it in the Stipulation and the Order hereon. No such waiver shall be effective or enforceable unless delivered in writing by Fannie Mae to Debtor. Delay in or

failure to exercise any of Fannie Mae's rights, remedies or powers shall not subject Fannie Mae to liability or a waiver of any such rights, remedies or powers in the future.

22. Fannie Mae expressly reserves its right to claim and assert that it is not adequately protected by this Stipulation. The Debtor is estopped from claiming, asserting, or arguing that Fannie Mae's willingness to enter into this Stipulation is evidence of adequate protection under section 361 or 362 of the Bankruptcy Code.

23. As partial adequate protection to Fannie Mae for the Debtor's use of Fannie Mae's Cash Collateral, and to protect against the diminution in value of Fannie Mae's interest in the Collateral, to the extent of the use of Cash Collateral or diminution of value of the Collateral on a dollar-for-dollar basis and to the same extent of such diminution (the "Adequate Protection Obligation"), Fannie Mae is hereby, to the same extent and validity, and in the same order of priority as its perfected secured interests in the Collateral, and pursuant to sections 361 and 363 of the Bankruptcy Code, granted valid, perfected, and enforceable liens (the "Replacement Liens") upon and security interests in all of the types of property coming into existence after the Petition Date (the "Postpetition Collateral"), but excluding any cause of action under sections 544, 547, 548 or 550 of the Bankruptcy Code (collectively, "Avoidance Actions"). The Replacement Liens granted herein shall have the same priority, extent and validity as the Prepetition Lien of Fannie Mae with respect to the Collateral existing up to the Petition Date used, sold or otherwise disposed of by the Debtor which secure the Prepetition Indebtedness, and such liens shall secure the Adequate Protection Obligation in an amount equal to the extent that the pre-petition Collateral securing the Prepetition Indebtedness diminishes in value.

24. The Replacement Liens in the Postpetition Collateral granted to Fannie Mae hereunder: (a) are and shall be in addition to all security interests, liens and rights of set-off existing

in favor of Fannie Mae which exist on the Petition Date, and (b) are and shall be valid, choate, perfected, enforceable, non-avoidable and effective as of the Petition Date, in each case to the same extent the Prepetition Lien is valid, choate, perfected, enforceable, non-avoidable and effective without any further action by the Debtor or Fannie Mae and without the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, or other documents. All security interests and liens granted herein to Fannie Mae be and hereby are deemed perfected, and no further notice, filing or other act shall be required to effect such perfection. If Fannie Mae shall, in its sole discretion, choose to file financing statements or other documents or otherwise confirm perfection of such security interests or liens, Fannie Mae is authorized to effectuate such filing and recordation.

25. As additional adequate protection, in the event that the Replacement Liens granted hereunder are insufficient to protect Fannie Mae with respect to the Adequate Protection Obligation, such Adequate Protection Obligation shall be afforded status as an allowed superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Bankruptcy Code to the extent of such insufficiency, which Superpriority Claim shall have priority over any and all other administrative claims against the Debtors now existing or hereafter arising in the Chapter 11 Case), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code.

26. Notwithstanding the foregoing, the Replacement Liens and Superpriority Claims shall be subject to and subordinate to (a) unpaid Chapter 11 professional fees and disbursements allowed by order of the Court up to the sum of $125,000, (b) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 (a)(6) and any fees payable to the clerk of the Court, and any interest on such fees, and (c) claims of administration of this case under Chapter 7

which are entitled to priority over chapter 11 administration expenses pursuant to 11 U.S.C. § 726(b) up to the sum of $5,000 (collectively, the "Carve-Out"). Any and all Post-Petition Liens granted hereby on accounts receivable, that are generated by the sale or other disposition of any tangible assets of the Debtor, shall attach to the same extent and with the same priority and validity that such liens had against such tangible assets on the later of the date of such disposition and the Petition Date.

27. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to one under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Stipulation until all indebtedness due Fannie Mae is indefeasibly satisfied and discharged. Nothing in this Stipulation shall, however, impair the provisions of section 726(b) of the Bankruptcy Code.

28. The Debtor shall, at its sole expense, seek Bankruptcy Court approval of this Stipulation.

29. Except as otherwise provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect, and Fannie Mae shall have all the rights provided therein, subject to the provisions of the Bankruptcy Code and any Orders of the Bankruptcy Court.

30. The provisions of this Stipulation shall be binding upon the Debtor and its respective successors and assigns, including any trustee hereinafter appointed in the within Chapter 11 case or any subsequent Chapter 7 case.

31. The Debtor, Fannie Mae and all other parties are hereby authorized and directed to execute all documents, notes, instruments, agreements and/or other items necessary to carry out the purposes of this Stipulation and to take any action necessary or appropriate to perfect liens created in this Stipulation.

32. The following shall constitute an event of default ("Event of Default") under this Stipulation:

(a) Improper Use of Cash Collateral. The Debtor shall fail to use the Cash Collateral in accordance with the Budget and this Cash Collateral Stipulation, including, but not limited to, failing to pay when due any non-insider wages or the fees due under 28 U.S.C. § 1930;

(b) Adequate Protection Payments. The Debtor shall fail to make all Adequate Protection payments pursuant to the terms of this Stipulation;

(c) Conversion. The entry of an order by the Court converting the Case to a case under chapter 7 of the Bankruptcy Code or appointing a chapter 11 trustee or examiner;

(d) Dismissal. The entry of an order by the Court dismissing the Case pursuant to § 1112(b) or 305 of the Bankruptcy Code or otherwise;

(e) Non-Compliance. The Debtor's failure to comply with any other provision of this Stipulation in any material respect;

(f) Senior Liens. The Debtor's grant of a lien, claim or other encumbrance upon the Postpetition Collateral senior in priority or *pari passu* with the Prepetition Lien;

(g) Challenge to Fannie Mae's Liens. Subject to the Reservation, the filing by Debtor of any motion, pleading, application or adversary proceeding challenging the amount, validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Collateral securing the Prepetition Indebtedness of Fannie Mae (or if Debtor

supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(h) Modification of Stipulation. The filing of a motion by Debtor seeking entry of an order, reversing, staying, vacating or otherwise modifying in any material respect the terms of this Stipulation, without the consent of the Prepetition Secured Party; and

(i) Sale of Assets. The sale or transfer of any material assets of Debtor, or the filing of a motion by Debtor seeking approval of the sale or transfer of any material assets of any Debtor without the written consent of Fannie Mae.

33. Should an Event of Default occur, Fannie Mae may file and serve by overnight mail or by e-mail, a written notice of default identifying the Event(s) of Default (and any provision(s) of this Stipulation with which the Debtor has allegedly failed to comply), upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case. The Debtor shall have five (5) business days to cure such default (provided that said default is capable of being cured). If the Debtor disputes Fannie Mae's determination that a default has occurred, the Debtor shall serve upon Fannie Mae by overnight mail or by e-mail a written notice that the Debtor contests Fannie Mae's determination, identifying the grounds for the Debtor's challenge, and seeking an expedited hearing on such matter to be heard by the Court. If after a hearing, the Court finds that the Debtor is in default hereof and such order and judgment is not stayed by the Court, any rights granted to the Debtor hereunder to use the Cash Collateral shall be terminated, expired and deemed vacated immediately as of the date of such finding or determination and the automatic stay contained in section 362(a) of the Bankruptcy Code shall be deemed vacated.

34. This Stipulation may be executed in counterparts and by electronic signatures and each such counterparts and signatures shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement.

35. To the extent this Stipulation and the Loan Documents conflict, this Court-ordered Stipulation governs. This Stipulation sets forth the entire agreement between the parties with respect to the matters stated herein and supersedes all prior discussions, negotiations and agreements, written or oral, and may not be modified except by a writing signed by the Debtor and Fannie Mae.

36. This Stipulation shall be effective immediately upon approval by the Court.

Dated as of January 22, 2026.

**KRCM ASTORIA PORTFOLIO CORP.**,
Debtor-In-Possession

By: ______________________
~~Rajmattie Persuad~~, President
KARAN SINGH

**GOLDBERG WEPRIN FINKEL GOLDSTEIN**
Counsel to the Debtor

By: ______________________
Kevin J. Nash
125 Park Avenue, 12th Floor
New York, NY 10017
Tel: (212) 221-5700
Email: knash@gwfglaw.com

**AKIN GUMP STRAUSS HAUER & FELD**

By: *\/s/ Dean L. Chapman Jr.*
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Tel: (212) 872-8095
Email: dchapman@akingump.com

-and-

Blaine T. Scott
2001 K Street, N.W.

Washington, D.C. 20006
Telephone: (202) 887-4000
Email: bscott@akingump.com

*Counsel to Federal National Mortgage Association*

**NO OBJECTION:**
**WILLIAM K HARRINGTON**
**UNITED STATES TRUSTEE, REGION 2**

**By:** */s/ Nazar Khodorovsky*
Nazar Khodorovsky
Trial Attorney
One Bowling Green, Suite 510
New York, New York 10004
(202) 834-2499

**SO ORDERED.**

**Dated: Brooklyn, New York**
**February 26, 2026**

Elizabeth S. Stong
United States Bankruptcy Judge

**Exhibit "A"**

**Monthly Budget**

Astoria Portfolio

**21-80 38th Street**
**23-15 30th Street**
**23-05 30th Street**
**Budget 2026**

| |
|---|
| 21-80 38th Street - 35 Residential Units; 6 Commercial Spaces & 3 ancillary leases (antenna / tower) |
| 23-15 30th Street - 42 Residential Units |
| 21-05 30th Street - 42 Residential Units |

| | Actual | Actual | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | 2026 Budget - Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Occupancy:** | 99% | 99% | 99% | 99% | 99% | 99% | 99% | 100% | 100% | 100% | 100% | 100% | |
| Gross Potential Rent | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $318,221 | $3,818,652 |
| Vacancy | ($3,182) | ($3,182) | ($3,182) | ($3,182) | ($3,182) | ($3,182) | ($3,182) | $0 | $0 | $0 | $0 | $0 | ($22,274) |
| Bad Debt | ($1,591) | ($1,591) | ($1,591) | ($1,591) | ($1,591) | ($1,591) | ($1,591) | $0 | $0 | $0 | $0 | $0 | ($11,137) |
| Concessions | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($600) | ($7,200) |
| **Net Rental Income** | **$312,848** | **$312,848** | **$312,848** | **$312,848** | **$312,848** | **$312,848** | **$312,848** | **$317,621** | **$317,621** | **$317,621** | **$317,621** | **$317,621** | **$3,778,041** |
| Commercial Income | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $36,352 | $436,224 |
| Commercial Vacancy | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Commercial Income** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$36,352** | **$436,224** |
| Other Income | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $3,000 |
| **EGI** | **$349,450** | **$385,802** | **$385,802** | **$385,802** | **$385,802** | **$385,802** | **$385,802** | **$390,575** | **$390,575** | **$390,575** | **$390,575** | **$390,575** | **$4,217,265** |
| Payroll and Benefits | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$6,936 | -$83,232 |
| Utilities | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$6,684 | -$80,208 |
| Repairs and Maintenance | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$4,815 | -$57,780 |
| General and Administrative | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$750 | -$9,000 |
| Real Estate Taxes | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$78,879 | -$946,548 - |
| Property Insurance | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | -$6,519 | $78,228 |
| Management Fees | -$10,484 | -$11,574 | -$11,574 | -$11,574 | -$11,574 | -$11,574 | -$11,574 | -$11,717 | -$11,717 | -$11,717 | -$11,717 | -$11,717 | -$138,514 |
| **Total Operating Expenses** | **-$115,067** | **-$116,157** | **-$116,157** | **-$116,157** | **-$116,157** | **-$116,157** | **-$116,157** | **-$116,300** | **-$116,300** | **-$116,300** | **-$116,300** | **-$116,300** | **-$1,393,510** |
| **NOI:** | **$234,384** | **$269,645** | **$269,645** | **$269,645** | **$269,645** | **$269,645** | **$269,645** | **$274,275** | **$274,275** | **$274,275** | **$274,275** | **$274,275** | **$2,823,755** |
| | **Jan-26** | **Feb-26** | **Mar-26** | **Apr-26** | **May-26** | **Jun-26** | **Jul-26** | **Aug-26** | **Sep-26** | **Oct-26** | **Nov-26** | **Dec-26** | |