AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Dean L. Chapman, Jr.

2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Blaine Scott

*Counsel for Federal National Mortgage Association*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| KRCM Astoria Portfolio Corp., | : | Case No. 25-44859 (ESS) |
| Debtor.[1] | : | |

**OBJECTION TO DEBTOR'S EMERGENCY MOTION**
**FOR THE ENTRY OF AN ORDER REIMPOSING THE AUTOMATIC STAY**
[Related to Docket No. 83]

Federal National Mortgage Association ("Fannie Mae") as a secured creditor of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, respectfully submits this objection and reservation of rights (the "Objection") regarding the *Debtor's Emergency Motion for the Entry of an Order Reimposing the Automatic Stay* [Docket No. 83] (the "Stay Motion"). In support of this Objection, Fannie Mae respectfully states as follows:

[1] The last four digits of the Debtor's tax identification number are 3632, and the location of the Debtor's business is 21-80 38th Street, Astoria, NY 11105.

## PRELIMINARY STATEMENT[2]

1. The Stay Motion is the latest tactic in the Debtor's relentless, two-and-a-half-year effort to stave off foreclosure of its mortgage loan. The Stay Motion was originally filed on an "emergency" basis before the Debtor adjourned it for a month, implicitly conceding there was never any "emergency."

2. The Stay Motion is plainly deficient. It cites no legal authority—statutory or otherwise—for the relief sought. Because the Modification Order lifting the automatic stay became effective on September 25, 2026 and has been in effect for nearly one month, the Debtor cannot request a "continuance" of the stay. Rather, the Debtor must either meet the "exceptional or extraordinary circumstances" standard of Federal Rule of Civil Procedure 60(b) for reconsideration, or satisfy the injunction standard for reimposition of the automatic stay. The Debtor meets neither.

3. The Debtor justifies the relief sought on an expired, non-binding and insufficient term sheet materially duplicating one it already had, *i.e.*, the "Morgan Stanley Term Sheet." And, this unsigned, non-binding expression of potential interest—subject to extensive due diligence contingencies and withdrawable at Morgan Stanley's sole discretion—was virtually indistinguishable from a term sheet the Debtor received in June 2026, before the Modification Order was entered. The Court already considered the Debtor's years-long history of failed refinancing efforts when it entered the Modification Order; the Morgan Stanley Term Sheet is no different. And the Morgan Stanley Term Sheet provided for financing in a maximum amount of $31 million, notwithstanding that nearly $37 million is owed on the mortgage loan. Regardless,

---

[2] Defined terms used but not defined herein shall have the meaning given to such terms in the Background or Objection sections of this Objection or in the *Motion to Lift the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) & 362(d)* [Docket No. 47] (the "Lift-Stay Motion").

the term sheet has now expired and the Debtor has provided no further update to Fannie Mae on the alleged offer, nor has the CRO been able to reach the individuals at Morgan Stanley identified on the letter of interest.

4. The Debtor is also unable to demonstrate irreparable harm. Nothing in the Modification Order prevents the Debtor from securing financing, paying Fannie Mae in full and mooting the Foreclosure Action without the automatic stay's protection. Although the Foreclosure Action has now resumed, it is virtually impossible any foreclosure sale will occur before Q2 2027. By contrast, Fannie Mae suffers concrete, mounting prejudice: it is owed over $36.4 million, is receiving no payments and has been forced to advance hundreds of thousands of dollars postpetition to pay taxes and insurance to protect its collateral while the Debtor has focused on "refinancing." And, ***leaving the automatic stay lifted does not create any irreparable harm; it merely permits an already-pending foreclosure action to proceed through ordinary process*** with the Debtor retaining any and all of its defenses there.

5. Regardless, because Fannie Mae has received only a small handful of adequate protection payments, and the Debtor consented to the Court's designation of it as an SARE, additional relief from the automatic stay is now warranted. If the Court granted the Debtor's Stay Motion, Fannie Mae would merely move for relief from the automatic stay on an alternative ground under Bankruptcy Code section 362(d)(3).

6. Ultimately, because the Stay Motion is merely a new iteration of the Debtor's persistent dilatory tactics, the Stay Motion should be denied.

## BACKGROUND

### A. The Loan and the Property

7. The Debtor is the owner of three multifamily residential apartment buildings located at (1) 23-05 30th Avenue; (2) 23-15 30th Avenue; and (3) 21-80 38th Street, in Astoria, Queens, New York (collectively, the "Property").[3] The Debtor's principal is Karan Singh; his wife, Rajmattie Persaud, is the 100% equity-holder and guarantor (the "Guarantor").[4]

8. On April 4, 2017, Fannie Mae issued a mortgage loan to the Debtor in the original principal amount of $34,700,000.00 (the "Loan"), secured by a mortgage on the Property.[5] The Loan matured on May 1, 2024. The Debtor failed to pay the Loan at maturity.[6]

### B. The Forbearance Agreements and the Foreclosure Action

9. Following the Loan's maturity, Fannie Mae sent a demand letter to the Debtor on May 21, 2024.[7] Thereafter, the parties entered into the Eighth Forbearance Agreement, dated July 19, 2024, granting the Debtor until October 31, 2024, to refinance and pay off the Loan.[8] The Debtor failed to do so.[9]

10. The parties then entered into the Final Forbearance Agreement, effective November 1, 2024, extending the payoff deadline to February 1, 2025.[10] In the forbearance agreements, the Debtor agreed that, upon failure to pay off the Loan by the applicable deadline: (a) it would consent

---

[3] Lift-Stay Motion, ¶ 12.

[4] Corporate Resolution, [Docket No. 1], at 5.

[5] Lift-Stay Motion, ¶¶ 17–24.

[6] *Id.*, ¶ 26.

[7] *Id.*, ¶ 28.

[8] *Id.*, ¶ 33.

[9] *Id.*, ¶ 34.

[10] *Id.*, ¶ 35.

to and not oppose foreclosure, receivership, or summary judgment and (b) the Loan would become fully recourse to the Guarantor.[11] The Debtor again failed to refinance by February 1, 2025.[12]

11. On March 12, 2025, Fannie Mae commenced the Foreclosure Action in the United States District Court for the Eastern District of New York.[13] On October 1, 2025, the District Court appointed a receiver (Trigild IVL, through its principal Ian Lagowitz) over the Property.[14]

12. Throughout this time, the Debtor consistently represented to Fannie Mae that it was on the precipice of refinancing the mortgage debt.[15] The Debtor provided various term sheets and other assurances that a refinancing was near at hand, and on multiple occasions Fannie Mae agreed to adjourn certain court deadlines in order to provide the Debtor additional time to complete the refinancing and pay off the loan.[16] This extensive case history is set forth in further detail in the *Declaration of Dean Chapman in Support of Motion to Lift the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) & 362(d)* [Docket No. 50] (the "Chapman Declaration"). Despite the Debtor's repeated claims and assurances that a refinancing was near or at hand, no such refinancing ever occurred.

**C. The Bankruptcy Case, Modification Order, and the Stay Motion**

13. On October 8, 2025 (the "Petition Date"), the Debtor filed this chapter 11 case. The Debtor fully conceded that the purpose of the bankruptcy filing was to prevent the receiver from taking possession of the Property.[17]

---

[11] *Id.*, ¶¶ 36–37.
[12] *Id.*, ¶ 38.
[13] *Id.*, ¶ 45.
[14] *Id.*, ¶ 49.
[15] Chapman Declaration, ¶ 4–19.
[16] *Id.*, ¶ 49.
[17] Lift-Stay Motion, ¶ 49.

14. As of the Petition Date, Fannie Mae was owed $34,547,520.64.[18] The unpaid principal balance alone is $31,027,549.28.[19] Additional amounts owed at that time included accrued interest at the nondefault rate ($2,065,366.01), accrued interest at the default rate ($1,813,387.88), forbearance fees ($40,000.00), replacement reserve fees ($1,000.00), tax and insurance advances ($1,135,852.22), broker opinion fees ($10,500.00), and legal fees and expenses ($417,059.56).[20]

15. Postpetition, Fannie Mae has been required to advance an additional $1,325,841.30 to protect its collateral—$1,040,730.67 for real property taxes and $285,110.63 for insurance.[21] This amount alone exceeds the sum of the four adequate protection payments the Debtor made during the course of this year-long bankruptcy proceeding. The Debtor's total outstanding obligation to Fannie Mae has only increased since the Petition Date, as interest, fees, and advances continue to accrue.[22] As of June 30, 2026 (the last time Fannie Mae prepared a formal payoff statement) the total amount due had increased to $36,474,632.11.

16. On December 19, 2025, Fannie Mae moved for the Debtor to be designated as a single asset real estate entity (an "SARE").[23] The Debtor did not contest Fannie Mae's motion, and on March 2, 2026, the Court entered an order designating the Debtor as an SARE.[24]

[18] *Id.*, ¶ 52.

[19] *Declaration of Ishan Patel in Support of Motion to Lift the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) & 362(d)* [Docket No. 48] (the "Patel Declaration"), Ex. 7.

[20] *Id.*

[21] Since the Lift-Stay Motion was filed, Fannie Mae has continued to make advances to the Debtor to pay taxes and insurance. *See* Patel Declaration, ¶ 30. Conversely, the Debtor has paid Fannie Mae monthly payments totaling $1,182,741.00. *See id.*

[22] *See id.*

[23] *Motion to Designate Debtor a Single Asset Real Estate Debtor pursuant to 11 U.S.C. § 101(51B)* [Docket No. 17] (the "SARE Designation Motion").

[24] Order Granting Motion to Designate Debtor a Single Asset Real Estate Debtor Pursuant to *11 U.S.C. § 101(51B)* [Dkt. No. 37] (the "SARE Order").

17. That same day, the Court entered the Cash Collateral Order, which was later extended until it was terminated.[25] The Cash Collateral Order required, among other things, that the Debtor: (a) open and maintain a single debtor-in-possession operating account ("DIP Account"); (b) make monthly adequate protection payments of $295,685.25 to Fannie Mae; and (c) comply with all Loan Document covenants, including financial reporting obligations.[26]

18. On May 27, 2026, the Court entered an order authorizing the retention of Ian Lagowitz as Chief Restructuring Officer ("CRO") pursuant to the terms of his engagement letter.[27] The CRO's engagement letter vested him with "sole access and control over the debtor-in-possession operating account, and direction over closing any other operating accounts of the Company" as well as responsibility for "assisting the Company in the preparation of cash requirements, cash forecasts and financial projections."[28]

19. On May 21, 2026, Fannie Mae served notice of multiple Events of Default under the Cash Collateral Order, including the Debtor's failure to maintain and fund the required DIP Account and failure to provide required financial reporting under the Loan Documents.[29] On June 3, 2026, Fannie Mae filed its Lift-Stay Motion.[30] The Debtor has not made a single payment to Fannie Mae since June 2, 2026.

---

[25] *Stipulation and Order Authorizing Debtor's Use of Cash Collateral, Payment of Adequate Protection and for Related Relief* [Docket No. 36] (the "Cash Collateral Order"); *Consent Order Extending Cash Collateral* [Docket No. 41]; *Termination Notice Under Stipulation and Order Authorizing Debtor's Use of Cash Collateral* [Docket No. 46].

[26] Cash Collateral Order, ¶¶ 9, 8(c), 13.

[27] *Order Authorizing Debtor to Retain Ian Lagowitz as Chief Restructuring Officer and Trigild IVL, LLC as Property Manager* [Docket No. 45].

[28] CRO Retention Application, [Docket No. 40], Ex. A.

[29] Default Letter, [Docket No. 44].

[30] *See generally* Lift-Stay Motion.

20. Filed in support of the Lift-Stay Motion was the Chapman Declaration, which detailed, *inter alia*, the Debtor's history of representations regarding "imminent refinancings," which have continued throughout the chapter 11 case.[31]

21. Following a hearing on July 23, 2026, and relying on declarations including but not limited to the Chapman Declaration, the Court entered an order granting Fannie Mae's Lift-Stay Motion (the "Modification Order").[32] However, the Court stayed the effective date of the Modification Order for sixty days—until September 25, 2026—to afford the Debtor a final opportunity to sell or refinance the Property.[33] That exact day, September 25, 2026, the Debtor filed the Stay Motion, attaching a term sheet from Morgan Stanley (the "Morgan Stanley Term Sheet").[34]

22. In anticipation of the Foreclosure Action resuming, Fannie Mae and the Debtor negotiated a briefing schedule for Fannie Mae's summary judgment motion seeking foreclosure of the mortgage loan. On September 25, 2026, Fannie Mae filed a stipulated summary judgment briefing schedule in the Foreclosure Action providing that all such briefing will be complete by December 18, 2026.[35] In light of this schedule and the time it takes to advertise a foreclosure sale once summary judgment is granted, the foreclosure sale of the Property will not occur before at least Q2 2027.

23. The Morgan Stanley Term Sheet expired on October 1, 2026. The Debtor has not communicated to Fannie Mae about anything related to the Morgan Stanley Term Sheet apart from

---

[31] Chapman Declaration, ¶¶ 3, 43–49.

[32] *Order Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) & 362(d)* [Docket No. 67].

[33] *Id.*

[34] *See* Stay Motion, Ex. A.

[35] *See Fed. Nat'l Mortg. Ass'n v. KRCM Astoria Portfolio Corp.*, No. 25-cv-1401 (E.D.N.Y. Sept. 25, 2026) [Docket No. 47].

filing the Stay Motion. Nor has the Debtor requested of Fannie Mae an updated payoff statement itemizing the total indebtedness due to Fannie Mae.

24. Fannie Mae has inquired of the CRO the status of the Morgan Stanley Term Sheet on various occasions. The CRO has communicated to Fannie Mae that the Debtor's principal has cut off all communications with him and is not involving him in the refinancing process. The CRO attempted to reach out to the Morgan Stanley bankers listed as contact persons on the Morgan Stanley Term Sheet, but he never received any response.

25. While the Stay Motion was filed on an emergency basis, the Debtor requested an adjournment of the Stay Motion to a hearing scheduled for October 29, 2026, to which Fannie Mae agreed.

## OBJECTION

26. The Court's Modification Order became effective and enforceable on September 25, 2026, lifting the automatic stay with respect to Fannie Mae and the Foreclosure Action.[36] The Debtor did not request a continuance prior to the effective date of the Modification Order and as such the Court's order may not be "continued."[37] The automatic stay has now been modified for Fannie Mae to pursue the Foreclosure Action for nearly one month.

27. After relief has been granted and become effective, the Debtor must meet the standards of Federal Rule of Civil Procedure ("FRCP") 60(b) to *reconsider* the granted relief, requiring a showing of extraordinary circumstances.[38] Alternatively, the Debtor could seek to

[36] *See*, *e.g.*, *Fed. Nat'l Mortg. Ass'n v. KRCM Astoria Portfolio Corp.*, No. 25-cv-1401 (E.D.N.Y. Sept. 25, 2026) [Docket No. 47].

[37] *In re Hedo*, No. 08-40148 (DEM), 2009 Bankr. LEXIS 138, *6 (Bankr. S.D.N.Y. Jan. 23, 2009) ("During the period from the filing date to the statutory termination date of February 10, 2008, the debtor took no action to have the automatic stay continue beyond that date.").

[38] *See*, *e.g.*, *In re Eletson Holdings Inc.*, No. 23-10322 (JPM), 2024 Bankr. LEXIS 13, *8 (Bankr. S.D.N.Y. Jan. 4, 2024) (noting that some courts have "distinguished motions to reconsider filed pursuant to FRCP 60(b) from motions

reimpose the automatic stay by showing that failure to reimpose the stay would result in irreparable harm to the Debtor.[39]

28. Instead of attempting to meet either of these standards, the Debtor cites no authority—statutory or otherwise—in the Stay Motion. The Debtor merely requests that the Court "enter an order continuing the stay on the effectiveness of the Order granting stay relief to the Lender, or to the extent necessary, reimposing the stay . . . ."[40]

29. Accordingly, Fannie Mae respectfully requests the Court deny the Debtor's Stay Motion in its entirety, maintaining the status quo.

### A. The Debtor Has Not Established Exceptional or Extraordinary Circumstances Sufficient to Warrant Reconsideration of Relief

30. Assuming, *arguendo*, the Court interprets the Stay Motion to move for reconsideration of the Modification Order, FRCP 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (citing *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (internal quotation marks omitted)). While broad relief may be available, "relief should not be granted unless [the] movant shows exceptional or extraordinary circumstances . . . or extreme or undue hardship." *In re AL & LP Realty Co.*, 164 B.R. 231, 234 (Bankr. S.D.N.Y. 1994) (internal citations omitted); *see also House v. Sec'y of Health & Hum. Servs.*, 688 F.2d 7, 9 (2d Cir. 1982) (collecting cases).

---

seeking to reimpose the automatic stay" and that a motion to reconsider under FRCP 60(b) would restore parties to the status quo before granting the order for relief from the automatic stay).

[39] *See id.* ("In obtaining an injunction, the moving party must show, in relevant part, that it 'will suffer irreparable harm in the absence of an injunction . . . .'" (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995)).

[40] Stay Motion, at 3.

31. In general, any motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *In re Richardson Foods*, 667 B.R. 500, 512 (Bankr. S.D.N.Y. 2025). Instead, courts grant such relief in narrow circumstances. *See In re K.G. IM, LLC*, 620 B.R. 469, 478 (Bankr. S.D.N.Y. 2020) (providing a "change in controlling law, new evidence, and need to correct a clear error and manifest injustice" are grounds to order relief under FRCP 60(b)(6)); *cf. In re Eletson Holdings Inc.*, 2024 Bankr. LEXIS 13, *16 (denying reconsideration of the court's previous order granting stay relief because confirmation of arbitration award would not impinge on any party's ability to assert causes of action relating to alleged fraudulent transfer of preferred shares and issues regarding timeliness of claims raised in the arbitration were properly addressed by the district court in the confirmation proceedings).

32. The Morgan Stanley Term Sheet was not an extraordinary circumstance that warranted or now warrants reconsideration of the Modification Order. To the contrary, it was similar to the term sheet the Debtor claimed to have received in July 2025—over a year ago—which was for "$30 million or 70% of the loan appraised value."[41] That prior term sheet never resulted in a closing. Even if taken at face value, the Morgan Stanley Term Sheet is wholly unactionable as it is now expired and would not even cover the principal balance on the Loan alone, and would leave Fannie Mae with a $3.5 million shortfall on its claim before taking into account millions more in postpetition accruals.[42]

33. Moreover, the Morgan Stanley Term Sheet was virtually indistinguishable from a term sheet the Debtor received in June 2026—prior to the July 23, 2026 hearing or the

[41] Chapman Declaration, ¶ 39.

[42] Patel Declaration, Ex. 7. This also assumes that the property appraises at or above $44.3 million. If the Property appraises at less than $44.3 million, the 70% loan-to-value calculation in the Morgan Stanley Term Sheet would result in a lower loan cap. *See* Morgan Stanley Term Sheet, at 2.

Modification Order—and which the Debtor sent to Fannie Mae (the "June 2026 Term Sheet"). The June 2026 Term Sheet is attached hereto as **Exhibit A**. ***The Debtor simply repackaged and redated the June 2026 Term Sheet—which existed at the time the Court heard and granted the Modification Order—and attempted to sell it as an "extraordinary circumstance," justifying exceptional relief***. The Debtor's conduct was and is wholly inappropriate and indicative of its years-long effort to pretend a refinancing is imminent to justify endless delay of Fannie Mae's contractual remedies.

34. Indeed, since the Loan matured in May 2024, the Debtor has engaged in a continuous pattern of representing that refinancing is "imminent," only to have each such representation prove unfounded.[43] The Morgan Stanley Term Sheet is simply the latest iteration of this pattern. The Debtor had over sixty days from entry of the Modification Order to advance a sale, as discussed at the July 23, 2026 hearing, and the Debtor did not do so. The Court already considered the Debtor's history of failed refinancing efforts when it entered the Modification Order.[44] There is no basis to revisit that determination based on yet another preliminary, non-binding indication of interest.

35. Even if it was not expired, the Morgan Stanley Term Sheet is illusory. It explicitly states on its face that it "constitutes neither an offer nor a commitment by [Morgan Stanley], but rather summarizes the general terms under which we would be willing to fund the Loan" and is expressly "subject to satisfactory completion of due diligence and underwriting of the asset as described below, and the approval of [Morgan Stanley's] credit committee."[45] It is not signed by

---

[43] Chapman Declaration, ¶¶ 3–49.

[44] *Id.*

[45] Morgan Stanley Term Sheet, at 1. The extensive due diligence requirements were also never initiated, let alone completed. These requirements include an MAI/FIRREA appraisal, engineering reports, environmental assessments, zoning review, title and survey, casualty and liability insurance review, tenant estoppel certificates and SNDAs, and

Morgan Stanley—the only signature appearing on the document is that of "Rajmattie Persaud" on the Sponsor signature line, bearing a date of "09/15/26," well before the effective date of the Modification Order.[46] The term sheet also contains a Material Event clause granting Morgan Stanley the unrestricted right, "in its sole and absolute discretion," to "withdraw, cancel or otherwise terminate this Term Sheet or modify the terms of same" at any time.[47] And the financing amount of $31 million is not enough to pay off the unpaid principal balance of the mortgage loan, let alone all the interest, fees, expenses, and advances.

36. In the Stay Motion, the Debtor claims that it will fill the gap with "the personal resources of the principals of the Debtor, Rajmattie Persaud and Karan Singh."[48] But the Debtor neglects to inform the Court that the City of New York has obtained approximately $30 million in judgments against Singh and Persaud and has placed restraints on certain of their bank accounts.[49]

37. In short, the Morgan Stanley Term Sheet was a now-expired preliminary expression of potential interest which did not provide sufficient financing to pay off the debt, was subject to numerous material conditions precedent that have not been satisfied, and was subject to withdrawal at the lender's sole discretion at any time. It does not, and cannot, constitute an extraordinary circumstance that would permit the Court to reconsider the Modification Order.

38. In sum, the Debtor's Stay Motion failed then, and fails now, to establish "extraordinary circumstances" that would be sufficient to warrant the Court's reconsideration of

---

additional property inspections. *Id.* at 5–6. These contingencies gave the proposed lender plenty of "wiggle room" to back out of the indication of interest.

[46] *See id.* at 12.

[47] *Id.* at 10.

[48] Stay Motion, at 1.

[49] *See*, *e.g.*, *Dep't of Hous. Pres. & Dev. of the City of N.Y. v. Singh*, No. LT-316487-24/BX (N.Y. Civ. Ct. Bronx Cnty. July 22, 2025) [Docket No. 107] (judgment totaling over $10 million); *id.* [Docket No. 380] (judgment totaling over $11 million); *Dep't of Hous. Pres. & Dev. of the City of N.Y. v. Singh*, No. LT-315261-24/BX (N.Y. Civ. Ct. Bronx Cnty. Oct. 15, 2025) [Docket No. 82] (judgment totaling over $8 million).

the Modification Order.

### B. The Debtor Has Not Established Irreparable Harm Sufficient to Warrant Reimposition of the Automatic Stay

39. As noted above, seeking reimposition of the automatic stay is akin to seeking an injunction. *See In re Eletson Holdings Inc.*, 2024 Bankr. LEXIS 13, *16; *In re Zahn Farms*, 206 B.R. 643, 645 (2d Cir. B.A.P. 1997) (noting that a "request to 'reinstate' the § 362(a) stay is, in fact, a request for an injunction and should meet the standards therefor"). To obtain an injunction, the moving party must show that it "will suffer irreparable harm in the absence of an injunction . . . ." *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).

40. Reimposition of the automatic stay is unnecessary because modification of the automatic stay has not and will not result in irreparable harm to the Debtor. Nothing in the Modification Order prevents the Debtor from obtaining financing, paying Fannie Mae in full, and mooting the Foreclosure Action—all without the protection of the automatic stay.[50] In fact, it is Fannie Mae's experience that borrowers frequently refinance their debt during a pending foreclosure action, without the need for the additional costs of a chapter 11 filing—and without the benefit of the nine-month forbearance period which Fannie Mae ***already*** granted Debtor.

41. The Debtor still has many months to complete any refinancing before the Foreclosure Action advances to a sale. The briefing schedule filed with the District Court—to which the Debtor agreed—contemplates the Debtor serving its opposition to Fannie Mae's motion for summary judgment by November 16, 2026, and Fannie Mae serving a reply by December 18, 2026.[51] Even assuming a ruling on summary judgment by January 2027, a sale process following entry of a judgment of foreclosure and sale could not realistically conclude before March 2027,

---

[50] *See generally* Modification Order.

[51] *See Fed. Nat'l Mortg. Ass'n v. KRCM Astoria Portfolio Corp.*, No. 25-cv-1401 (E.D.N.Y. Sept. 25, 2026) [Docket No. 47].

given the advertising and notice requirements attendant to a foreclosure sale. The Debtor still has ample time to complete any alleged refinancing while the Foreclosure Action progresses.

42. In contrast, the prejudice to Fannie Mae from further delay is substantial. Fannie Mae has been owed in excess of $34.5 million since the Loan matured in May 2024—well over two years ago.[52] The Debtor has made no progress toward a refinancing despite repeated representations to the contrary and ceased making adequate protection payments many months ago.[53] Each additional month of delay increases the accrual of interest, fees, and costs, and further erodes Fannie Mae's collateral position.[54]

43. Accordingly, "[t]he Debtor does not present any arguments that would warrant the Court exercising its § 105(a) equitable powers to reimpose the automatic stay in this case." *In re Vorburger*, No. 09-13871 (AJG), 2010 Bankr. LEXIS 2970, *2–3 (Bankr. S.D.N.Y. Aug. 31, 2010) (finding no independent basis to reimpose the stay after the debtor failed to seek a continuance prior to the effectiveness of stay relief). If a refinancing by Morgan Stanley is ever as truly imminent as the Debtor claims, it can proceed even with the Modification Order in place.

### C. Bankruptcy Code Section 362(d)(3) Requires Relief from the Automatic Stay

44. Reimposition of the automatic stay would be contrary to the Bankruptcy Code as relief from the automatic stay is now *required* under Bankruptcy Code section 362(d)(3). Bankruptcy Code section 362(d)(3) provides specific procedures for SAREs, like the Debtor, to follow to protect against concerns of bad faith. Specifically, section 362(d)(3) states:

> On request of a party in interest and after notice and a hearing, the court ***shall*** grant relief from the stay provided under subsection (a) of this section . . .
>
> (3) with respect to a stay of an act against single asset real estate under

[52] *See* Lift-Stay Motion, ¶ 52.

[53] *See* Chapman Declaration, ¶¶ 3–49.

[54] The Debtor has not made monthly payments to Fannie Mae since June 2, 2026, while Fannie Mae continues to advance the Debtor's tax and insurance payments. *See* Patel Declaration, ¶ 30.

> subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
> (A) the debtor *has* ***filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time***; or
>
> (B) the debtor ***has commenced monthly payments*** that
>
> (i) may, in the debtor's sole discretion . . . be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to the interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3) (emphasis added).

45. Intermittent payments do not meet the statutory definition of "monthly payments," which has been interpreted to mean continuous, ongoing payments. *See In re 652 W. 160th LLC*, 330 B.R. 455, 462 (Bankr. S.D.N.Y. 2005) ("[A]ssuming *arguendo* that a timely payment was proffered, one interest payment made two months into the bankruptcy does not meet the statutory requirement of 'monthly payments.'").

46. The Debtor filed this case on October 8, 2025, and the Court designated the Debtor as an SARE on March 2, 2026. Over one ***year*** into this case, the Debtor has not filed a plan of reorganization. The Debtor made monthly payments to Fannie Mae in the months of March, April, May and June 2026.[55] Fannie Mae has not received any payments from the Debtor since June 2, 2026, and the Debtor's total outstanding obligation to Fannie Mae only continues to grow because

[55] Patel Declaration, ¶ 31.

of the failure to make payments. Accordingly, additional avenues for relief from the automatic stay like Bankruptcy Code section 362(d)(3)—which Fannie Mae will otherwise seek if the stay is reimposed—are available at this point anyway.

***

47. Based on the foregoing, the Stay Motion has not established evidence sufficient to grant relief under either an extraordinary circumstances or irreparable harm standard. Fannie Mae, therefore, respectfully requests the Court to deny the Debtor's Stay Motion in its entirety.

**RESERVATION OF RIGHTS**

48. This Objection is submitted without prejudice to, and with a full reservation of, Fannie Mae's rights, including the right to amend, modify, or supplement this Objection, to raise additional objections, and to introduce evidence at any hearing relating to this Objection, and without in any way limiting any other rights of Fannie Mae to further object to the Stay Motion, on any grounds, as may be appropriate.[56]

[56] Although in ordering the Stay Motion to be heard on an emergency basis, the Court noted that a briefing schedule for a written opposition may be set at the October 2, 2026 hearing, since the hearing was adjourned and no briefing schedule established, Fannie Mae filed this Objection in advance of the October 29, 2026 hearing to provide the Court with necessary context. *See Order Scheduling a Conference on Shortened Notice on the Debtor's Emergency Motion to Impose the Automatic Stay* [Docket No. 87].

New York, New York
Dated: October 22, 2026

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Dean L. Chapman, Jr.*

Dean L. Chapman, Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-8095
Facsimile: (212) 872-1002
dchapman@akingump.com

-and-

Blaine Scott (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
bscott@akingump.com

*Counsel for Federal National Mortgage Association*